UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—---------------------------------------x
RONALD DAVIDSON,                           :

                 Plaintiff,                :

   -- against --                          :

OFFICE OF COURT ADMINISTRATION  :
and LAWRENCE MARKS, in his official
capacity as Chief Administrative      :
Judge of New York State Courts; and         _____ Civ. _____
ALIA RAZZAQ, in her official capacity  :
as Chief Clerk of the New York City
Civil Court; and TRACEY FERDINAND  :     COMPLAINT
in her official capacity as a Housing
Court Judge in the New York City      :
Civil Court; and JOHN SULLIVAN
in his official capacity as Statewide    :
ADA Coordinator for New York
Courts; and JOHN DOE, in his          :
official capacity as Sec. 504
Coordinator for New York Courts;      :
and DENNIS KEHOE, in his
capacity as Executor of the Estate    :
of Ursula BeauSeigneur,

                            :
               Defendants.
—---------------------------------------x

## Preliminary statement

1. The Office of Court Administration (OCA) of the New York State

(NYS) Unified Court System (UCS) unlawfully discriminate against

disabled litigants in New York City (NYC) in the Housing Part of the Civil Court of the City of New York (NYC Civil Court) by:

>(a) neglecting to acknowledge any <u>affirmative</u> and <u>prophylactic</u> duties to provide timely, meaningful access to its program, services, activities and benefits; and

>(b) actively, intentionally, unequivocally refusing, denying, rejecting any acknowledgement of <u>affirmative</u> and <u>prophylactic</u> responsibilities to court users with disabilities as mandated by the US Supreme Court in *Tennessee v. Lane*, 541 US 509, 533-534 (2004).

2. The OCA and the NYC Civil Court unlawfully discriminated against the Plaintiff in Housing court by:

>(a) neglecting its <u>affirmative</u> and <u>prophylactic</u> duties to develop <u>interactive</u> processes for determining reasonable accommodations and modifications of procedures in advance of my request when I asked for exactly that, citing *Tennessee v. Lane, supra*; and

>(b) blocking my program access in Housing Court by failing to act in advance of hearings.

3. The OCA and the NYC Civil Court unlawfully discriminated against the me in Housing Court by:

(a) denying me any acknowledgement of any responsive duties to provide timely, meaningful program access in response to timely written requests for <u>interactive</u> processes for determining appropriate reasonable accommodations and modifications of procedures for a qualified Respondent with handicaps as defined in Section 504 of the Rehabilitation Act of 1973 (RA or Sec. 504), 29 USC §794, et seq., as amended; and

(b) effectively blocking meaningful program access by refusing my requests for timely cooperation; and

(c) violating the express warranty documented by the <u>continuing</u> UCS' RA/Sec. 504 notices which are presumed to be posted in compliance with 28 CFR §42.505(c).

4. The UCS "gatekeeper" for the NYC Civil Court is Chief Clerk Alia Razzaq.

5. The UCS and the NYC Civil Court and Chief Clerk Razzaq unlawfully discriminated against me by:

(a) effectively denying their  <u>affirmative</u>, <u>prophylactic</u> and <u>responsive</u> duties to cooperate with me in creating a record of multi-step burden-shifting dialogue about needed accommodations and procedural modifications for a qualified

Respondent with disabilities as defined by Title II of the Americans with Disabilities Act of 1990 (ADA), 42 USC §12131, et seq., as amended; and

(b) effectively blocking meaningful program access by refusing my requests for timely cooperation; and

(c) violating the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.

6. The Manhattan Housing Court (Housing Court), is historically indifferent to statutory and contractual obligations to make the protections of disability rights law meaningful and effective for court users; and intentional discrimination may be inferred when policymakers acted with at least deliberate indifference to the strong likelihood of an ensuing violation of federally protected rights.

7. The goals of this lawsuit should be simple, but over the course of the past 43 years, UCS has made everything harder than it needs to be.

8. The need for this lawsuit should have been obviated by the enactment of the Civil Rights Restoration Act 35 years ago, by the ADA 32 years ago, and by the ADAAA 14 years ago; and it should

be perceived as shameful that a man with a disability has good

cause to seek relief in federal court by asking:

(a) for this court to issue a Temporary Restraining Order

pausing all proceedings in *Kehoe v. Davidson* until after UCS

complies with 28 CFR part 42 and 28 CFR part 38  – that is,

a temporary restraint on the Housing Court and Judge

Ferdinand until UCS acts on my timely requests for serial

interactive processes for determining reasonable

accommodation which are now needed more desperately

than in December 2019; and

(b) for this court to issue an Order to Show Cause requiring

Defendants to explain and defend:

- why UCS did not acknowledge my timely in-person

  request for an interactive processes for determining

  appropriate reasonable accommodations and

  modifications of procedures for an RA/Sec.

  504-qualified and ADA-qualified litigant with disabilities

  in December 2019 and January 2020; and

- why UCS did not acknowledge my timely in-person and

  written request for the initiation of three interactive

  processes of determining appropriate reasonable

accommodations and modifications of procedures for an RA/Sec. 504-qualified and ADA-qualified litigant with disabilities on August 8; and

- why UCS has neither complied with my requests for interactive processes nor denied the requests in writing as required by 28 CFR §35.164 [decision that compliance would result in a fundamental alteration in the nature of a service, program, or activity must be accompanied by a written statement of the reasons for reaching that conclusion]; and

- why UCS has neither complied with its continuing duty to comply with 28 CFR §42.505(f) [RA/Sec. 504 notice] nor replied to my written request on September 26 for

    - contact information for UCS's RA/Sec. 504 coordinator as required by 28 CFR 42.505(d); and

    - contact information for UCS's RA/Sec. 504 grievance process as required by 28 CFR 42.505(e); and

- why UCS has neither responded to written grievances submitted to the ADA Coordinator by an RA/Sec. 504-qualified and ADA-qualified litigant with disabilities

on August 23, September 6, September 9 and

September 26 nor denied these grievances in writing;

and

(c) for this court to issue a declaratory judgment stating that

UCS' words in compliance with the following are express

warranties as defined by NY UCC §2-313:

- 28 CFR §42.505(f) [RA/Sec. 504 notice] and 28 CFR
  §35.106 [ADA notice]; and

- 28 CFR §42.505(d) [RA/Sec. 504 Coordinator] and 28
  CFR §35.107(a) [ADA Coordinator]; and

- 28 CFR §42.505(d) [RA/Sec. 504 grievance process]
  and 28 CFR §35.107(b) [ADA grievance process]; and

- 28 CFR §42.505(c) [RA/Sec. 504 self-evaluation] and
  28 CFR §35.105) [ADA self-evaluation]; and

(d) for this court to issue a declaratory judgment stating

that the UCS has intentionally discriminated against me by

neglecting affirmative, prophylactic and responsive duties to

differently abled court users, including me, who need

accommodations and modifications of procedures in order to

enjoy full meaningful program access; and

(e) for this court to issue a declaratory judgment stating that the UCS has shown deliberate indifference to compliance with 28 CFR part 42 and 28 CFR part 38; and

(f) for this court to issue a permanent injunction requiring the UCS to develop verifiable, transparent and effective policy, procedures, processes, staff training and training programs for judges which are needed to ensure timely, meaningful program access for people with disabilities, including me; and

(g) for this court to issue a permanent injunction requiring the UCS to develop verifiable employee notice and training programs for UCS staff and judges about the statutory and contractual duties of New York Courts to court users with disabilities; and

(h) for this court to monitor UCS compliance to ensure something good actually happens – not facile lip service, nor the intentional discrimination evidenced by the words posted today in UCS online webpages; and

(i) for this court to award damages and costs.

**Jurisdiction**

9. This Court has jurisdiction over civil actions based on the Constitution and laws of the United States pursuant to 28 USC §1331; and the Court has jurisdiction to secure equitable or other relief under any Act of Congress providing for the protection of civil rights pursuant to 28 USC §1343; and the Defendants' NYS immunity is abrogated by Rehabilitation Act Amendments of 1986, 100 Stat. 1845 §1003(a)(1); 42 USC §2000d-7(a)(1); and NYS immunity is separately abrogated by the ADA, 42 U.S. Code § 12131(1)(A)-(B) and regulations implementing the ADA at 28 CFR §35.178

10. This Court's jurisdiction to provide verifiable preventive relief or other order is confirmed by 29 USC §794a(a)(2) and 42 USC §§12132-12133 pursuant Rule 65 of the Federal Rules of Civil Procedure (FRCP).

11.  This Court's jurisdiction to provide verifiable preventive relief or other order is confirmed by 28 CFR §35.172(d) and 42 USC §§12132-12133 pursuant FRCP Rule 65.

12. This Court has jurisdiction to issue declaratory judgment pursuant to 28 USC §§2201-2202 and FRCP Rule 57.

13. In the context established above, this Court may exercise its supplemental jurisdiction pursuant 28 USC §1367.

## **Venue**

14. Venue is proper in this Court, pursuant to 28 USC §1391(b), because both the Plaintiff and the Defendant are located within this District; and the focal point of all actions and omissions giving rise to the claims in this Complaint have occurred in this District.

## **Parties**

15. Plaintiff is a qualified person with handicaps as defined by the RA/Sec. 504, including US Department of Justice (DOJ) regulations implementing the Act at 28 CFR part 42, subpart G.

16. Plaintiff is a qualified person with disabilities as defined by Title II of the ADA, including DOJ regulations implementing the Act at 28 CFR part 35.

17. Plaintiff is a 72-year-old person asserting rights protected by the Age Discrimination Act of 1975, 42 USC 6101 et seq., including US DOJ regulations implementing the Act at 28 CFR part

42, subpart I and US Department of Health and Human Services (HHS) regulations at 45 CFR part 90.

18. Plaintiff is a "person" as defined by New York State (NYS) Human Rights Law (NYSHRL), NYS Exec. Law §292.1.

19. Plaintiff is a person with disabilities as defined by NYS Exec. Law §292.21(a)-(c).

20. Plaintiff is a "person" with a "disability" and a "person aggrieved" as defined by New York City (NYC) Human Rights Law (NYCHRL), NYC Administrative Code (NYC Code) §8-102.

21. Plaintiff is a member of a protected class of New Yorkers with disabilities as defined by NYCHRL at NYC Code §8-101, §8-102 and §8-107(15)-(17), which brings complementary local law focus to the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR part 42; and the Age Discrimination Act at 45 CFR part 90 and Title II of the ADA at 28 CFR part 35; moreover, the NYC Council argued that federal and state disability rights laws should be viewed as a floor below which the NYCHRL cannot fall, rather than a ceiling above which the local law cannot rise.  -- see "Local Civil Rights Restoration Act of 2005," Local Law No. 85 [2005] of City of NY § 1.

22. The Hon. Lawrence Marks, in his official role as UCS Chief Administrative Judge and head of the OCA, is an employee of a recipient of federal financial assistance, and this means his actions and inaction must be compliant with the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR §§42.501-42.540; and the Age Discrimination Act at 28 CFR §§42.700-42.799, incorporating the purpose and intent of 45 CFR §§90.1-90.62 at 28 CFR §42.700(b).

23. Judge Marks is an NYS government employee, and this means his actions and inaction are subject to the mandates of Title II of the ADA, including regulations at 28 CFR §§35.101-35.999; and in his official capacity as a UCS administrator, he enjoys qualified immunity for exercise of his discretionary judgment and ministerial actions; and that immunity extends to the court staff and administrative system he oversees.

24. The OCA and Judge Marks are each a "person" as defined by NYSHRL at NY Exec. Law §292.1; and Judge Marks' leadership and oversight role is central in venues which NYSHRL defines as "place[s] of public accommodation" at NY Exec. Law §292.9; and this role encompasses ensuring the court users with handicaps or

disabilities have meaningful program access in every court, including the New York County Housing Court.

25. The OCA and Judge Marks are each a "person" as defined by NYCHRL at NYC Code §8-102; and each are also a "public agency" and a "place or provider of public accommodation" as defined by NYC Code §8-102.

26. Alia Razzaq, in her official role as Chief Clerk of the NYC Civil Court, is an employee of a recipient of federal financial assistance, and this means her actions and inaction must be compliant with the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR §§42.501-42.540; and the Age Discrimination Act at 28 CFR §§42.700-42.799 and 45 CFR §§90.1-90.62.

27. Chief Clerk Razzaq is an NYS government employee, and this means her actions and inaction are subject to the mandates of Title II of the ADA, including regulations at 28 CFR §§35.101-35.999; and in her official capacity as a UCS administrator, she enjoys qualified immunity for exercise of her discretionary judgment and ministerial actions; and that immunity extends to the court staff and administrative system she oversees.

28. Chief Clerk Razzaq is a "person" as defined by NYSHRL at NY Exec. Law §292.1; and the Chief Clerk's leadership and oversight role is central in her own courthouse, which NYSHRL defines a "place of public accommodation" at NY Exec. Law §292.9; and this role encompasses ensuring the court users with handicaps or disabilities have meaningful program access, including the Plaintiff.

29. Chief Clerk Razzaq is a "person" as defined by NYCHRL at NYC Code §8-102; and she is also a "public agency" and a "place or provider of public accommodation" as defined by NYC Code §8-102.

30. The Hon. Tracy Ferdinand, in her official role as a judge in the Housing Part of the NYC Civil Court (Housing Court), is an employee of a recipient of federal financial assistance, and this means her actions and inaction must be compliant with the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR §§42.501-42.540; and the Age Discrimination Act at 28 CFR §§42.700-42.799 and 45 CFR §§90.1-90.62.

31. Judge Ferdinand is an NYS government employee, and this means her actions and inaction are subject to the mandates of

Title II of the ADA, including regulations at 28 CFR §§35.101-35.999; and in her official capacity as a UCS judge, she enjoys full judicial immunity for every exercise of her discretionary judgment and qualified immunity for her ministerial actions.

32. Judge Ferdinand is a "person" as defined by NYSHL at NY Exec. Law §292.1; and the Housing Court judge's presiding role is central in her own courtroom, which NYSHRL defines a "place of public accommodation" at NY Exec. Law §292.9; and this role encompasses ensuring that all court users with handicaps or disabilities have meaningful program access, including the Plaintiff.

33. Judge Ferdinand is a "person" as defined by NYCHRL at NYC Code §8-102; and she is also a "public agency" and a "place or provider of public accommodation" as defined by NYC Code §8-102.

34. John Sullivan, in his official role as USC Statewide ADA Coordinator, is an employee of a recipient of federal financial assistance, and this means his actions and inaction must be compliant with the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR §§42.501-42.540; and

the Age Discrimination Act at 28 CFR §§42.700-42.799 and 45 CFR §§90.1-90.62.

35. Mr. Sullivan is an NYS government employee, and this means his actions and inaction are subject to the mandates of Title II of the ADA, including regulations at 28 CFR §§35.101-35.999; and in his official capacity as a UCS administrator, he enjoys qualified immunity for exercise of his discretionary judgment and ministerial actions, but that immunity does not extend to the court staff and administrative system he is responsible for "coordinating."

36. Mr. Sullivan is a "person" as defined by NYSHRL at NY Exec. Law §292.1; and the ADA Coordinator's leadership and oversight role is central in venues which NYSHRL defines as "place[s] of public accommodation" at NY Exec. Law §292.9; and this role encompasses ensuring the court users with handicaps or disabilities have meaningful program access, including the Plaintiff.

37. Mr. Sullivan is a "person" as defined by NYCHRL at NYC Code §8-102; and he is also a "public agency" and a "place or provider of public accommodation" as defined by NYC Code §8-102.

38. John Doe, in his official role as UCS's RA/Sec. 504

Coordinator, is an employee of a recipient of federal financial

assistance, and this means his actions and inaction must be

compliant with the remedial purpose and scope of regulations

implementing the RA/Sec. 504 at 28 CFR §§42.501-42.540; and

the Age Discrimination Act at 28 CFR §§42.700-42.799 and 45

CFR §§90.1-90.62.

39. John Doe is an NYS government employee, and this means

his actions and inaction are subject to the mandates of Title II of

the ADA, including regulations at 28 CFR §§35.101-35.999; and

in his official capacity as a UCS administrator, he enjoys qualified

immunity for exercise of his discretionary judgment and

ministerial actions, but that immunity does not extend to the

court staff and administrative system he is responsible for

"coordinating."

40. John Doe is a "person" as defined by NYSHRL at NY Exec. Law

§292.1; and the RA/Sec. 504 Coordinator's leadership and

oversight role is central in venues which NYSHRL defines as

"place[s] of public accommodation" at NY Exec. Law §292.9; and

this role encompasses ensuring the court users with handicaps or

disabilities have meaningful program access, including the Plaintiff.

41. John Doe is a "person" as defined by NYCHRL at NYC Code §8-102; and he is also a "public agency" and a "place or provider of public accommodation" as defined by NYC Code §8-102.

42. The late Dennis Kehoe is the named petitioner in a holdover proceeding captioned *Dennis J. Kehoe, as Executor of the Estate of Ursula Beauseigneur, deceased v. Ronald Davidson*, L&T Index No. 072772/2019, which is pending.  The New York County Probate Court has confirmed Patrick Kehoe as successor Executor, but the  Estate's motion to correct the caption has not been decided by Judge Ferdinand.

## **Enacted findings of Congress = context**

43. The eight Congressionally enacted findings in the ADA statute at 42 USC §12101 are a part of federal law; and these legislative facts establish an under-appreciated context for the specifics of this Complaint:

The Congress finds that—

(1) physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society, yet

many people with physical or mental disabilities have been precluded from doing so because of discrimination …;

(2) historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(3) *discrimination against individuals with disabilities persists in such critical areas as … communication… and access to public services*;

(4) unlike individuals who have experienced discrimination on the basis of race, color, sex, national origin, religion, or age, individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination;

(5) *individuals with disabilities continually encounter various forms of discrimination, including … the discriminatory effects of … communication barriers … failure to make modifications to existing … practices, exclusionary … standards and criteria … and relegation to lesser services, programs, activities, benefits … or other opportunities*;

(6) census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally;

(7) the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation … for such individuals; and

(8) the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity … to pursue those opportunities for which our free society is justifiably famous. [emphasis in (3) and (5) added with *italics*] 42 USC §12101(a), Findings and purpose

## **Procedural facts = context**

44. Plaintiff Ronald Davidson is a 72-year-old man living on Roosevelt Island in an apartment owned by the Estate of Ursula Beauseigneur; and in December 2019, the Executor of the Estate, the late Dennis Kehoe, caused a legal notice to be served about a holdover petition in Housing Court.

45. In advance of the calendared appearance date, the Plaintiff went to the Manhattan Housing Court Part D for two purposes:

(a)  to self-identify as a litigant with disabilities caused by a Traumatic Brain Injury (TBI) in 1979; and

(b) to request an interactive process of determining reasonable accommodation and modifications of procedures in advance of the first court date.

46. In January 2019, Housing Court Judge Kimon Thermos acknowledged that the Respondent in *Kehoe v. Davidson* was a litigant with disabilities; and as a reasonable accommodation, he

ordered an expedited copy of an audio recording of a pre-trial conference to be provided.

47. The pandemic interrupted the regular operations of the Housing Court; and the first calendared hearing in *Kehoe v. Davidson* was delayed until August 2022 when my December 2019 request for an interactive process was effectively denied by Judge Ferdinand without an oral or written explanation.

## **Genesis of this complaint**

48. On August 8, September 12 and September 30 the Respondent learned that the UCS had created impossibility of performance, effectively undermining the Constitutional rights of litigants with disabilities, including me, while also invalidating federal, state and municipal disability rights law; and this is what caused a Respondent in a small holdover case in housing court to become a Plaintiff in federal court.

## **1st cause re systemic indifference**

49. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

50. The Housing Court undermines, marginalizes program access for litigants with handicaps or disabilities; and this pattern and practice of unlawful discrimination was made specific for me in each day I was in court in 2019-2022; moreover, the evidence that constitutionally guaranteed rights are being violated, without more, is sufficient to establish the element of irreparable injury, which is what this case is about.

51. The Housing Court has effectively denied my program access with systemic indifference; and the effective denial of an underline interactive process for reasonable accommodation is evidence that my constitutionally guaranteed rights are being violated; moreover, this became a series of irreparable injuries on August 8, September 12 and September 30.

52. Meaningful Housing Court program access was denied me because of deliberate indifference to my capacities and circumstances.

53. The Housing Court denied my program access by doing nothing, by causing me to wait for a decision or response which never came and denying me a written explanation about why my requested interactive process was considered unreasonable; and

this became a series of irreparable injuries on August 8,

September 12 and September 30.

54. My Constitutional rights of due process and equal protection

of the laws were effectively denied by hearings which were not

calendared at a meaningful time and in a meaningful manner.

55. Plaintiff's program access in Housing Court was blocked by

four interrelated barriers which denied my opportunity to be

heard at a meaningful time and in a meaningful manner; and

also, the corporate culture of deliberate indifference exacerbated

the effects of systemic barriers deprived me due process and the

equal protection of disability rights laws which were enacted to

prevent precisely this kind of charade.

(a) Re discriminatory barriers created by Judge Marks and

the OCA

(i) prior to Aug 8 hearing (Dec 12, 2019 – Aug 7, 2022)

(ii) on the day of Aug 8 hearing

(iii) prior to Sept 12 hearing (Dec 12, 2019 – Sept 11,

2022)

(iv) on the day of Sept 12 hearing

(v) prior to Sept 30 hearing (Dec 12, 2019 – Sept 30,

2022)

(vi) on the day of Sept 30 hearing

(vii) following the Sept 30 hearing

(b) Re discriminatory barriers created by Judge Ferdinand

(i) prior to Aug 8 hearing (Dec 12, 2019 – Aug 7, 2022)

(ii) on the day of Aug 8 hearing

(iii) prior to Sept 12 hearing (Aug 8 – Sept 11, 2022)

(iv) on the day of Sept 12 hearing

(v) prior to Sept 30 hearing (Aug 8 – Sept 11, 2022)

(vi) on the day of Sept 30 hearing

(vii) following the Sept 30 hearing

(c) Re intentional discriminatory barriers created by an

officer of the court

(i) prior to Aug 8 hearing (May 3 – Aug 7, 2022)

(ii) on the day of Aug 8 hearing

(iii) prior to Sept 12 hearing (May 3 – Sept 11, 2022)

(iv) on the day of Sept 12 hearing

(v) prior to Sept 30 hearing (May 3 – Sept 11, 2022)

(vi) on the day of Sept 30 hearing

(d) Re discriminatory barrier created by NYC Civil Court

Chief Clerk Razzaq

(i) prior to Aug 8 hearing (Dec 12, 2019 – Aug 7, 2022)

(ii) on the day of Aug 8 hearing

(iii) prior to Sept 12 hearing (Aug 8 – Sept 11, 2022)

(iv) on the day of Sept 12 hearing

(v) prior to Sept 30 hearing (Aug 8 – Sept 30, 2022)

(vi) on the day of Sept 30 hearing

(vii) following the Sept 30 hearing

## 2nd cause re housing court judge hamstrung by UCS

56. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

57.  In Housing Court, the Judge Ferdinand was unable to ensure timely and adequate accommodations for me in her courtroom; and in part, this happened because the judge and I were frustrated in our need for benefits of four *ante hoc* <u>interactive</u> processes for determining appropriate reasonable accommodation and modifications of procedures for a litigant with neurological disabilities.

58. On August 8, both the judge and I were effectively hamstrung by unlawful discriminatory UCS policy and procedures which have developed, evolved and ossified over decades.

59. Judge Marks is ultimately responsible for the UCS' indifference to <u>affirmative</u> and <u>prophylactic</u> obligations affecting litigants with disabilities like me; and the cumulative indifference of Judge Marks' predecessors also undermined Judge Ferdinand's ability to do her job.

60. In the 43 years since the enactment of a federal law defining and prohibiting discriminationon the basis of disability in the program, activities, services and benefits of recipients of federal funding, the deliberate indifference of successive heads of the OCA has caused great harm in the lives of untold numbers of New Yorkers; and the avoidance of any UCS acknowledgment of the consequences of deliberate indifference is not among the good and reasonable functions of the qualified immunity afforded to nine men and two women since the Rehabilitation Act of 1973 was signed into law by President Nixon on September 26, 1973:

1. Hon. Richard J. Bartlett (1974–1979)
2. Hon. Herbert J. Evans (1979–1983)
3. Hon. Robert J. Sise (1983–1985)
4. Hon. Joseph W. Bellacosa (1985–1987)
5. Hon. Albert M. Rosenblatt (1987–1989)

> Note that the Civil Rights Restoration Act of 1987 was vetoed by President Reagan, and his veto was overridden by the Senate and the House on March

22, 1988; 100th Congress, Pub.L. 100–259, 102
Stat. 28

6. Hon. Matthew T. Crosson (1989–1993)

Note that the Americans with Disabilities Act of
1990 was signed into law by President Bush on
July 26, 1990: 101st Congress, Public law
101-336; 104 Stat. 327

7. Hon. E. Leo Milonas (1993–1995)
8. Hon. Jonathan Lippman (1996–2007)
9. Hon. Ann Pfau (2007–2011)
Note that ADA Amendments Act (ADAAA) was
signed into law by President Bush on September
25, 2008: 110th Congress, Public Law 110-325;
122 Stat. 3553

10. Hon. A. Gail Prudenti (2011–2015)
11. Hon. Lawrence K. Marks (2015–present)

61. An unlawful discriminatory venue was contrived by the UCS

before any word was spoken in the first hearing in *Kehoe v.*

*Davidson* before Judge Ferdinand on August 8, which violated the

express warranty documented by the UCS' ADA notices posted in

compliance with 28 CFR §35.105; and also, this example of

deliberate indifference violated the remedial purposes and intent

of 28 CFR §42.503(b)(3) ["recipient may not ... utilize criteria or

methods of administration that either purposely or in effect

discriminate on the basis of handicap, defeat or substantially

impair accomplishment of the objectives of the recipient's program or activity"] and 45 CFR §90.12(b) [Denying the benefits of ... a program or activity receiving federal financial assistance, or ... limiting individuals in their opportunity to participate]; compare 28 CFR §35.130(3)(i)-(ii) ["public entity may not ... utilize criteria or methods of administration ... that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program"]

62. On August 8, Judge Ferdinand was blindsided when I asked her to confirm in the 2019-2020 trial record that Judge Thermos acknowledged I am a litigant with disabilities; and I was blindsided when the judge revealed that the UCS administration made my question impossible for her to answer, which violated of the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.  Both the judge and I were frustrated and hampered by the consequences of UCS decision-making in advance of the hearing, contrary to the clear mandates of serial Congresses and the US Supreme Court.

## 3rd cause re "ambush" by officer of the court

63. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

64. On August 8, the words and actions of Attorney Matthew Chenoweth focused attention on the significant distinction between a lawyer representing a client within the four corners of a lawsuit and an officer of the court acting *sua sponte*.

65. On August 8, Mr. Chenoweth contrived an "ambush" – abandoning his role as my advocate; and he chose instead to redefine himself *sua sponte*, cloaked in the status of his official capacity as officer of the courts of the State of New York, which violated the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.

66. On August 8, an officer of the court appeared in court with a surprise plan to explode the conventional legal process in *Kehoe v. Davidson* by trying to argue *in camera* that the hearing about a scheduled motion must be delayed until after the judge urgently refers my name to NYC Adult Protective Services (APS); and also, arguing that all hearings must be paused until after the judge appoints a Guardian *ad litem* (GAL) for me.

67.  On August 8, an officer of the court created a fraud on the court by asking Judge Ferdinand to act immediately, while at the same time withholding germane information:

(a) He knowingly chose <u>not</u> to inform the judge that his client is a litigant with disabilities; and

(b) He knowingly chose <u>not</u> to ask Judge Ferdinand to check the court records about Judge Thermos' 2019 decision to acknowledge I am a litigant with disabilities; and

(c) He knowingly chose <u>not</u> to give Judge Ferdinand a neurologist's letter which explains how timely requests for modifications of procedure and other accommodations are related to my specific neurological disabilities; and

(d) He knowingly chose <u>not</u> to report to Judge Ferdinand that he sent me an e-mail at 6:06 pm on Friday, August 5, confirming he would "submit a request on [my] behalf" for accommodation and modification of procedures; and

(e) He knowingly chose <u>not</u> to inform the court that he explained in his August 5 e-mail that I didn't need to come to court for this hearing; and

(f) He knowingly chose <u>not</u> to inform the court, as he told me on August 8, that he decided to urge Judge Ferdinand to

refer me to APS and to appoint a GAL <u>before</u> he sent me his

August 5 e-mail.

68. On August 8, I was "ambushed" by an officer of the court who

targeted known cognitive handicaps in a way which was

calculated to exacerbate my impaired responses to shock and

surprise — to cause me to act like a deer in headlights — and he

gambled he would get away with this fraud because of his status

as an officer of the court; moreover, this heedless gamble seems

to be working in a way which confirms the court's deliberate

indifference to the consequences of unlawful discrimination.

69.  On August 8, the lawyer representing the Petitioner in

Housing Court also complained that his client was "ambushed" by

the surprise; and he was correct — but this is distinguishable

from the intentional discrimination which targeted me.

70. On August 8, an officer of the court perpetrated an adverse

party fraud as codified at CPLR §5015(a)(3); and there can be no

doubt that he knew his words were false when he "testified" that

I'm incapable of understanding what is happening in court;

moreover, the judge's response to his request for an appointment

of a GAL for a litigant with disabilities was undertaken lightly, wth

deliberate indifference to procedural safeguards.

71. On August 8, my first line of defense against unlawful discrimination should have been Judge Ferdinand, but she acknowledged no special duty to a litigant with disabilities sitting in front of her in her own courtroom; and in fact, she only appeared to be willing to move forward based on the allegations of the officer of the court standing in front of her — and my Constitutional and statutory rights on that day were effectively invalidated, which violated the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.

72.  On August 8, I was frightened by the cognitive dissonance of Judge Ferdinand when I requested that she take no action until after I'd had an opportunity to speak with the Chief Clerk of the Housing Court; and I was further alarmed when there were no responsive words which acknowledged the research and reasoning which informed my words and actions, nor were there words about the relevance of statutory and contractual duties of UCS to a litigant with disabilities in a proceeding over which the judge was presiding, which violated the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.

73. On August 8, Judge Ferdinand did not acknowledge the functional consequences of the adverse role contrived by the officer of the court; but I did, and I was specific in defining this as unlawful discrimination when I made an in-person request for an <u>interactive</u> process for determining reasonable accommodation which arose from

> (a) what the judge revealed about unlawful discriminatory actions of UCS before the hearing; and

> (b) what the unlawful discriminatory words and actions of an officer of the court functioning as an adverse party revealed about what UCS had not done in advance of the hearing; and

> (c) what the judge revealed about UCS in her critical silence and inaction.

74. On August 8, Judge Ferdinand devalued my words – and her unlawful discrimination was based solely on the conclusory opinions of an officer of the court; and also, the judge's cognitive dissonance blocked her from grasping the significance of my words when I explained that Mr. Chenoweth told me that Randal Jeffrey, General Counsel of the New York Legal Assistance Group (NYLAG), told him to tell me that NYLAG refused to provide an

interactive process of reasonable accommodation because it was "only for employees, not clients," which violated the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.

75.  On August 8, I was, in effect, "ambushed" by what the judge didn't understand about what was happening in her courtroom and by a bias which made her unwilling to grasp the significance of my words; and the personal good intentions of the judge were overwhelmed by the consequences of gaps UCS' training programs for judges; and on the same day, I was very specific in the Housing Part Clerk's office as I asked three times in-person for reasonable accommodation in the form of training for the judge about disability rights law in advance of the next scheduled hearing on September 12.

## 4th cause re indifference of Chief Clerk Razzaq

76. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

77. On August 8, I tried to follow instructions I read in a poster taped to a wall in the courthouse; but despite what I read, the court officers at the White Street entrance would not call the

secretary of Chief Clerk Alia Razzaq to ask about the process of

making an appointment for an in-person request for an

<u>interactive</u> process for determining reasonable accommodation

and modifications of procedures for a litigant with disabilities.

78.  On August 8, the court officers sent me to the 2nd floor

Housing Court Clerk's office.  My attempt to make an in-person

application for reasonable accommodation was fraught; and I was

alarmed by the the <u>responsive</u> consternation as I explained to

three successive clerks that my unique disabilities could not be

accommodated without an <u>interactive</u> process for determining

appropriate reasonable accommodation and modifications of

procedure, as has been anticipated at 28 CFR §42.503(g)

["enumeration of specific forms of prohibited discrimination … is

not exhaustive but only illustrative"].  In support, I offered a

letter prepared by one of my doctors; nevertheless, each clerk

refused to read the letter and each acted as if I were the first and

only person to use the words "<u>interactive</u> process."

79. I explained to Senior Housing Court Clerk Stephanie White

that neurological disabilities caused by a head trauma were

affected in complicated ways by a long-haul viral infection in

October 2021-March 2022; and because of this, I needed to be specific in my requests:

(a) With respect, I asserted that the housing court has an <u>affirmative</u> and <u>prophylactic</u> duty to me; and as support, I cited a US Supreme Court case which was unfamiliar to Ms. White. *Tennessee supra.*

(b) With respect, I asserted that difficult-to-parse neurological disabilities caused me to require a special kind of <u>responsive</u> action from the court administration – timely feedback and cooperation from someone with experience, training and understanding about:

 (i) the mandates of federal, state and municipal disability rights law; and

(ii) the parts of NYS Real Property Actions and Proceedings (RAPL) applicable to housing court; and

(iii) a practical grasp of what actually does happen and may possibly happen in the course of a hearing in housing court.

(c) With respect, I asserted that in 2022, it becomes an incident of unlawful discrimination for the court to demand that I re-invent the wheel as Ms. White and her colleagues

required me to do; and for emphasis, I asked her if she understood what I was trying to say with the phrase "re-inventing the wheel," and she said "yes."

(d) With respect, I asked Ms. White to add a few legally meaningful words to the housing court form she was filling out; and I watched her write "<u>interactive</u> process for determining reasonable accommodation," but I can't recall whether she also wrote "modifications of procedures."

(e) With respect, I asked Ms. White to add two cites from federal regulations implementing disability rights law; and I explained that the fact that I was trying to support my request for accommodation with any kind of federal regulation citation should be interpreted as evidence of the research which informs my understanding of what I was asking – and I watched as Ms. White recorded two cite errors on the form:

(i) I asked her to write "28 CFR Sec. 130," but the citation should have been 28 CFR §35.130 in 28 CFR part 35 [Nondiscrimination on the Basis of Disability in State and Local Government Services]); however, my spoken words drew Ms. White's attention to the fact

that my urgent request for an <u>interactive</u> process was supported by US Department of Justice (DOJ) regulations implementing the ADA; and

(ii) I asked her to write "45 CFR Sec. 84.4," but the citation should have been 28 CFR §42.503 in 28 CFR part 42, subpart G [Nondiscrimination Based on Handicap in Federally Assisted Programs or Activities - Implementation of Section 504 of the Rehabilitation Act of 1973]); however, my spoken words were about DOJ regulations implementing the RA/Sec. 504.

(f) With respect, I asserted to Ms. White that my need for an <u>interactive</u> process was urgent because of the disabilities which are highlighted in the doctor's letter I had in hand – and I waited as Ms. White copied the letter from Dr. Chou, and then returned it to me.

(g) With respect, I asserted that in 2022, it would become an incident of unlawful discrimination if the housing court were  to fail to work with me in an <u>interactive</u> process to develop accommodations and modifications of procedures in advance of the next scheduled hearing on September 12.

80. There was no action in response for many days; and so I followed up in writing.  On August 21, I sent e-mails to the following:

- Hon. Lawrence Marks, Chief Administrative Judge
     UCS
- Hon. Carolyn Walker-Diallo, Administrative Judge
     Civil Court of the City of New York
- Hon. Jack Stoller, Supervising Judge, Housing Court
     Civil Court of the City of New York
- Hon. Norma Jennings, Supervising Judge, Housing Court
     Civil Court of the City of New York
- Alia Razzaq, Chief Clerk of the Housing Court
     Civil Court of the City of New York

81. An initial volley of e-mails produced only automated responses; and so, on August 22, I reached out to the office of the ADA Coordinator by e-mail, asking John Sullivan for an in-person appointment to discuss my need for program access; and also, I called OCA, leaving a recorded phone message seeking an in-person appointment; but neither effort produced responsive words or action.

82. Later on August 22, I sent another e-mail message to Chief Clerk Razzaq with a copy to ADA Coordinator Sullivan.  I explained that my expectations about an interactive process were informed by previous requests for reasonable accommodation which had given me an opportunity to work with former Chief

Clerk Ernesto Belzaguy; but this new attempt produced no meaningful action.

83. On August 22, I re-sent what I'd already written to Chief Clerk Razzaq; but this time, I used a newly discovered e-address and I used similar subject lines. My efforts produced no meaningful action.

- Alia Razzaq, Chief Clerk of the Housing Court
  Civil Court of the City of New York
    Subject: ADA Accommodation Request #2
    Subject: ADA Accommodation Request #3
    Subject: ADA Accommodation Request #4

84. On August 23, I submitted a "Grievance re NYC Civil Court Chief Clerk Alia Razzaq" to the ADA Coordinator with a copies to Judge Marks, Judge Stoller and Chief Clerk Razzaq; but my e-mail produced no meaningful action.

85. On September 8, Chief Clerk Razzaq phoned me at home, and then she confirmed the substance of our conversation in a follow-up e-mail on September 9; but in the very detailed context established by my doctor's letter I submitted on August 8, the Chief Clerk's words were too little, too late — and her untimely response proved to be more unworkable than I'd feared when I appeared in Judge Ferdinand's courtroom on September 12.  Chief Clerk Razzaq wrote:

As a follow up to our conversation this afternoon, you seek an interactive dialogue regarding ADA accommodations relating to an upcoming hearing in the Housing Court. Per our conversation your ability to speak, listen and think quickly have been impacted by a virus during the Pandemic, and you are concerned that the cognitive disability described by your provider will affect your ability to listen to, understand and overall "keep-up" with what is being presented at the hearing.

You request that the request  the following ADA accommodations :

- A CART reporter that can be read in real time
- Transcripts of the audio record captured at the hearing scheduled for 9/12/22 and all prior proceedings held regarding 72772/19
- The presiding Judge ensure that all parties presenting at the hearing speak slowly allowing additional time to process what is being said
- Additional time be allotted for the hearing

You are also concerned that:

- Your representation has possibly caused you additional barriers as they advised you that they will not be responding to the petitioner's motion and will be submitting a motion to withdraw as counsel, which will leave you to respond to the petitioner's motion as an unrepresented litigant.
- That you do not understand the process for responding orally or in writing to the petitioner's motion and will experience additional challenges in both comprehending and responding to the motion if you do not have representation.

- A Guardian Ad Litem (GAL) will be appointed to you have decided that this will not be of any benefit to you as you have researched data and reviews regarding GALs in Housing Court and it is your preference that you are assigned legal representation, but no GAL

Please advise if this summary is accurate so that I may forward a request for accommodation to the Judge for review. *You are aware that as ADA Coordinator, I will forward all requests for ADA accommodation to the Judge for review, but am limited with regard to relaying any concern that might be received as Ex-Parte communications and/or any effort to impact the matter before the court.*

We will have an affidavit to proceed as a poor person requesting that the court waive the fees for transcriptions prepared and available for you to review and acknowledge when you arrive on Monday.

I am available should you have any questions or concerns. [emphasis added with *italics*]

86.  Plaintiff invested many hours per day from August 9 through September 8 in a futile effort to write in a way which might persuade the UCS administration to cooperate with me in an <u>interactive</u> process of determining accommodation; and I was forced to struggle with untimely *ad hoc* procedures which inevitably failed because of Ms. Razzaq'a indifference to a meaningful outcome, which violated the express warranty documented by the UCS' ADA notices posted in compliance with

28 CFR §35.105; and my requests for essential <u>interactive</u> processes was effectively denied without giving me a written explanation for the denials.

87. Plaintiff's expectations about the requested <u>interactive</u> process were informed by *The First Report of the Presidential Task Force on Employment of Adults with Disabilities* (1998), which

proposed that written *procedures for processing requests for reasonable accommodation should include statements like the following*:

> (1) Explaining that *a request for reasonable accommodation may be initiated orally or in writing*;

> (2) Explaining *how a request for reasonable accommodation is processes, and from whom the Plaintiff will receive a final decision*;

> (3) Explaining *a time period during which reasonable accommodation requests will be granted or denied*, absent extenuating circumstances;

> (4) Explaining the *responsibility of the Plaintiff to provide appropriate medical information related to the functional impairment at issue and the requested accommodation*

where the disability and/or need for accommodation is not

obvious;

(5) Explaining the Court's *right to request relevant*

*supplemental medical information* if the information

submitted does not clearly explain the nature of the

disability, or the need for the reasonable accommodation;

(6) Explaining the Court's *right to have medical information*

*reviewed by a medical expert* of the Court's choosing at the

Court's expense;

(7) Explaining that *reasonable accommodation denials be in*

*writing and specify the reasons for denial*;

(8) Explaining that the Court's *recordkeeping tracks the*

*processing of requests for reasonable accommodation* and

*maintains the confidentiality of medical information received*

*in accordance with applicable law and regulations*; and

(9) Explaining the use of *informal dispute resolution*

*processes to allow individuals with disabilities to obtain*

*prompt reconsideration of denials of reasonable*

*accommodation*. [emphasis added with *italics*] "Executive

Order 13164 of July 26, 2000 Requiring Federal Agencies To

Establish Procedures To Facilitate the Provision of

Reasonable Accommodation," 46566 *Federal Register*, Vol.

65, No. 146,  Friday, July 28, 2000, Presidential Documents

## 5th Cause re inadequate interactive process

88. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

89. On September 12, my need for <u>interactive</u> processes was brushed aside by Judge Ferdinand; and my requests were effectively denied without giving me a written explanation for the denials.

90.  On September 12, Judge Ferdinand effectively decided that two real-time accommodations were reasonable: (a) asking the lawyers to speak slowly; and (b) providing a Communication Access Real-time Translation (CART).  Also, she decided that offering to provide me a post-hearing transcript in advance of the next scheduled hearing was reasonable.

91.  On September 12, Judge Ferdinand did not explain in spoken words or writing why some accommodations were reasonable, but others were not – no words or writing why gravamen of my requests for multiple *ante hoc* <u>interactive</u> processes were

effectively denied without giving me a written explanation for this denial.

92.  Instead of acknowledging *a priori* Constitutional obligations to a litigant with disabilities in her courtroom, Judge Ferdinand exercised her judicial discretion to focus attention on a surprise written motion which I learned about only minutes before the scheduled hearing; and my *ante hoc* requests for interactive processes were effectively denied without giving me a written explanation for the denials.

93. Judge Ferdinand prioritized the Order to Show Cause motion presented by an officer of the court.  Mr. Chenoweth's OSC motion argued (a) the attorney assigned to me because of the NYC Right to Counsel Law (RTC) should be given permission by the judge to withdraw; and (b) a GAL should be appointed because of the lawyer's belief in my incompetence.

94.  Judge Ferdinand's discretionary decision to focus on papers submitted by an officer of the court — setting aside my August 8 in-person request for three <u>interactive</u> processes of reasonable accommodation — violated my Constitutional right to due process and equal protection of the laws of the United States; and my

requests were effectively denied without giving me a written explanation for this denial.

95.  In effect, on September 12, Judge Ferdinand steamrolled over me; and there was nothing I could do about it except to hope for timely relief in federal court.

96.  Judge Ferdinand did not acknowledge her statutory and contractual duties to a litigant with disabilities in a hearing over which she presided, which violated the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105; and in so-doing, the judge's words and actions violated a federal regulation which was edited in 2017 to add greater emphasis on the need to remedy the consequences of business-as-usual UCS policies and practices of deliberate indifference.

> The obligation to comply with this subpart is *not obviated* by or otherwise affected by the existence of any *State or local … requirement that, on the basis of disability, imposes … limits upon the eligibility of qualified individuals with disabilities to receive services*. [emphasis added with italics] -- see 28 CFR § 42.502(c)(1) [Federal Register. Vol. 82, No. 12. Thursday, January 19, 2017. p. 6406]

97.  On September 12, Judge Ferdinand decided, in effect, that the motion papers of the officer of the court *obviated* her

<u>affirmative</u> <u>prophylactic</u> duty to me to provide an *ante hoc*

<u>interactive</u> process, which violated the express warranty

documented by the UCS' ADA notices posted in compliance with

28 CFR §35.105; and in so-doing, the judge also invalidated the

courtroom venue on that day, and she also invalidated the venue

she projected for September 30.

98.  On September 12, Judge Ferdinand's discretionary decisions

were <u>not</u> challenged; however, this case was properly brought to

federal court to remedy the business-as-usual ministerial acts of

the judge which invalidated a heightened standard of scrutiny

mandated by the NYCHRL "protected class" status accorded

persons with disabilities, including me:

> This subpart does not invalidate or limit *the remedies,*
> *rights, and procedures of any … local law … that provide[s]*
> *greater … protection for the rights of individuals with*
> *disabilities*. [emphasis added with italics] -- see 28 CFR
> § 42.502(c)(1) [Federal Register. Vol. 82, No. 12. Thursday,
> January 19, 2017. p. 6406; compare 28 CFR § 35.103(b)
> ["does not invalidate or limit the remedies, rights, and
> procedures of any … local laws… that provide greater ... for
> the rights of individuals with disabilities."]

99.  The courthouse which includes Judge Ferdinand's courtroom

was built by NYC in 1960, and the property is maintained by the

NYC Department of Citywide Administrative Services (DCAS); and

this requires Judge Ferdinand to acknowledge NYCHRL protections which cannot be gainsaid without a clear explanation on the record orally or in writing.

100.  On September 12, Judge Ferdinand decided, in effect, to deny my requests for underline interactive processes which were presented to an appropriate UCS official on August 8; and the judge's action violated NYCHRL protections enacted by the New York City Council with the intention of enhancing the remedial purpose and scope of regulations implementing the the RA/Sec. 504 at 28 CFR part 42, subpart G; and the the Age Discrimination Act at 28 CFR part 42, subpart I; and Title II of the ADA at 28 CFR part 35.

## 6th Cause re discriminatory venue creation

101. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

102. On September 12, Judge Ferdinand signed an Order to Show Cause (OSC) submitted by an officer of the court; and this was simultaneously a discretionary act and a ministerial act which projected a unique discriminatory venue for the afternoon of September 30.

103.  Only a few minutes before the signing, Judge Ferdinand acknowledged orally that she had a letter from my neurologist which was timely submitted to the Chief Clerk of the Civil Court of New York on August 8, 2022.

104. If Judge Ferdinand read the doctor's letter carefully before she took the bench, good; but she asked me no questions what she read -- and this one presumed action alone was not an adequate response to my repeated requests for timely "interactive processes for determining appropriate reasonable accommodation or modifications of procedures" in advance of the hearing on September 12; nor was a single, rushed phone call from Chief Clerk Alia Razzaq on September 8 sufficient for her to have complied with the broad remedial purposes of disability rights laws about accommodations for litigants with neurological disabilities — and this heedless charade violated the express warranty documented by the UCS' ADA notices posted in compliance with 28 CFR §35.105.

105. A fact is meaningful -- that Chief Clerk Razzaq only acknowledged the existence of my doctor's letter while not acknowledging her affirmative and prophylactic and responsive duties to ensure access to the "program" of the housing court for

any and all persons with disabilities or handicaps, including me; and this fact became legally significant at two pivotal instances on September 12 -- first, when Judge Ferdinand called #26 on her calendar; and second, when the judge signed the OSC.

106. An unlawful discriminatory venue was contrived by the court administration on August 8 and September 12, 2022.

107. A unique discriminatory venue was contrived by Judge Ferdinand to come into being on Friday, September 30, 2022; and this venue violated federal regulations which anticipate protecting someone like me in situations like this.

108. The fact that Judge Ferdinand acknowledged the existence of my doctor's letter implied she also acknowledged the fact that I'm a litigant with an array of specific neurological handicaps as are explicitly identified in statutory language enacted by Congress in 1973 and emphasized with redundant repetition in statutory language passed by Congress in 1990.

109. Neither on August 8 nor on September 12 did Judge Ferdinand acknowledge a legal fact – that as an employee of a public entity which accepts federal funding, a condition of her employment requires her (a) to know that her business-as-usual role in her own courtroom is affected by an array of federal, state

and local disability rights laws when any Respondent with disabilities appears before her, including me; and (b) to know that it's a judge's responsibility to speak and act accordingly.

110. Neither on August 8 nor on September 12 did the judge acknowledge a legal fact – that she has a personal and specific <u>affirmative</u> and <u>prophylactic</u> duty to anticipate and to plan in advance to accommodate my difficult-to-parse array of handicaps and disabilities in her courtroom.  Nor did the judge acknowledge her personal and specific responsive duties which arose when I made oral and written requests for accommodation.

111.  The harmful consequences of UCS' indifference became uniquely significant at the pivotal moment when Judge Ferdinand's ministerial act — signing her name — projected a unique discriminatory venue on September 30, 2022; and neither September hearing was at a meaningful time — following *ante hoc* <u>interactive</u> processes for determining reasonable accommodation — nor was either hearing accessible to me in a meaningful manner.

**7th Cause re effective denial of program access**

112. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

113. The "program and activities" of the Housing Court encompass a mandated compliance with the municipal "Right to Counsel Law" (NYCRTC or RTC), NYC Code §26-1302.  For me, the RTC functions as an important accommodation for neurological disabilities, but I was deprived of this program access accommodation on August 8, September 12 and September 30 when my ostensible RTC-mandated advocate chose *sua sponte* to speak and act as an adverse party, and Judge Ferdinand decided to preserving a legal fiction that this adverse party is nevertheless a meaningful voice for me; moreover, the judge was indifferent to the harmful cascade of consequences for me in hearings over which she presided.

114. An unlawful discriminatory scenario proposed by an officer of the court deprived me of the RTC-mandated accommodation I need.  His role was adverse in each hearing, but an administrative legal fiction wrongly guided Judge Ferdinand as she persisted in ignoring the unlawful discriminatory reality this created for me. Each hearing required me to speak and listen – and to think

quickly – as a *pro se* litigant; and this means that on August 8,
September 12 and September 30, the mandates of 28 CFR part
35 and 28 CFR part 42 and 45 CFR part 90 were inextricably
linked to the RTC because of my cognitive and communication
disabilities and my age.

115. Judge Ferdinand's discretion endorsed Mr. Chenoweth's
writing; and her undoubted power to make this decision is
inherent in her role.  At the same time, her signature was a
ministerial action which projected a discriminatory disparate
consequence based solely on my cognitive and communication
disabilities and age; and her signature effectively undermined my
meaningful access to the program, services, activities and
benefits of the Housing Court.

116. Judge Ferdinand's signature was a ministerial act; and it
remains today inconsistent with assurances submitted by NYS,
the UCS and NYC to the DOJ pursuant 28 CFR §42.504(a) ["Every
application for Federal financial assistance ... contain an
assurance that the program or activity will be conducted in
compliance with the requirements of section 504"].

**8th Cause re "weaponizing" disability**

117. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

118.  On August 8, September 12 and September 30, Judge Ferdinand presided over hearings in which the lawyer identified on the docket as my advocate presented arguments against my Consitutionally-guaranteed interests; and the judge asked no questions as this officer of the court presented his conclusory opinions based solely on confidential and privileged conversations in which I was trying to explain what I thought he needed to know about my disability.

119. On September 30, Judge Ferdinand presided over a hearing in which the plain language of the Order to Show Cause required the opposing counsel to show cause why the judge should not grant permission for my lawyer to withdraw from the case – with no clear role for me to do or say anything, thus depriving me of an essential feature of the RTC law; and so, I was effectively denied the meaningful services and benefits which are mandated by RTC for every other low-income litigant in the NYC Civil Courthouse "program" in August and September, but <u>not</u> for me

in a unique venue where my Constitutionally-protected rights were marginalized.

120.  On September 12, Judge Ferdinand acknowledged that she had a letter from my neurologist, but she then decided to ignore the gravamen of the letter on September 12 and September 30; and she never explained orally or in writing why she effectively denied my serial oral and written requests and why she also effectively denied the credibility and significance of the written words of a medical professional certified by the American Board of Psychiatry and Neurology (ABPN).

121.  On September 30, the biased focus of the hearing was skewed in favor of the unlawful discrimination strategy put forward by an officer of the court arguing in a role adverse to my express desires; and the judge said nothing as my role was devalued into an inferior posture of rebuttal, which the US Supreme Court recognizes as a violation of the 14th Amendment's Due Process and Equal Protection clauses:

> The burdens thus placed upon the petitioner were real, not purely theoretical. For "it is plain that where the burden of proof lies may be decisive of the outcome." *Speiser v. Randall*, 357 US 513, 357 US 525. Yet these burdens would not have been imposed upon him had he been given timely notice in accord with the Constitution.  A fundamental requirement of due process is "the opportunity to be heard."

*Grannis v. Ordean*, 234 US 385, 234 US 294.  It is an opportunity which must be granted at a meaningful time and in a meaningful manner. The trial court could have … wiped the slate clean. Only that would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place. *Armstrong v. Manzo*, 380 US 545, 551-352. (1965). [restoring someone to the position he would have occupied had due process of law been accorded to him in the first place]

122.  The unlawful discriminatory basis for each hearing on August 8, September 12 and September 30 was solely and exclusively the fact of my disability and nothing more; but Judge Ferdinand effectively decided to acknowledge only legal norms of 1972, prior to President Nixon's signature which was intended to make a federal disability rights law normative going forward in room 524 of the NYC Civil Courthouse in Manhattan.

123.  An officer of the court "weaponized" my disability to harm me; and the court permitted this to happen in a venue which was invalidated *a priori* by the UCS failure to provide neither the reasonable accommodation requested nor a written explanation why my timely requests were effectively denied.

124.  The USC failure to comply with 28 CFR part 42 and 28 CFR part 35 were on full display in Judge Ferdinand's courtroom, and the real culprits in this awful story are the ten Chief

Administrative Judges whose inaction made a day in court like

mine inevitable, not only for me, but probably for countless other

litigants with disabilities in NYC Housing Courts since 1973.

125. The underlying responsibility for what happened in Housing

Part D on August 8, September 12 and September 30 is shared

by former-Chief Administrative Judges Richard J. Bartlett, Herbert

J. Evans, Robert J. Sise, Joseph W. Bellacosa, Albert M.

Rosenblatt, Matthew T. Crosson, E. Leo Milonas, Jonathan

Lippman, Ann Pfau, A. Gail Prudenti and the current Chief

Administrative Judge, Lawrence K. Marks.


**9th Cause re RA/Sec 504 notice**

126. Plaintiff realleges and incorporates in this Cause of Action all

previous paragraphs of this Complaint.

127. The Notice mandated by 28 CFR §42.505(f)(1) is an

inextricable and <u>continuing</u> element of the program, activities,

services and benefits of the UCS; and as such, NY UCC §2-313(2)

defines this "notice" as an express warranty about program

access for litigants with disabilities, including me.

128. The Notice mandated by 28 CFR §42.505(f)(1) is a

<u>continuing</u> affirmation of fact or promise, and it thus creates an

express warranty that the UCS program shall conform to the affirmation or promise; and as such, NY UCC §2-313(1)(a) defines this "notice" as an express warranty about program access for litigants with disabilities, including me.

129. The Notice mandated by 28 CFR §42.505(f)(1) is a continuing UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines this "notice" as an express warranty about program access for litigants with disabilities, including me.

130. Judge Marks and Mr. Sullivan harmed me by failing in affirmative prophylactic duties to provide timely, meaningful and continuing notice and training for UCS staff about the affirmative and prophylactic function of the RA/Sec. 504 Notice and the ADA, which undermines the interactive function and intent of 28 CFR §42.505(f)(1); and my experience with UCS staff, Chief Clerk Razzaq, Mr. Sullivan, Judge Marks and Judge Ferdinand informs my understanding of the harms they each individually and together caused.

131. Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

(a) the head of OCA and the ADA Coordinator made affirmative decisions when they chose not to provide timely, meaningful and continuing notice and training for UCS staff about the interactive function and intent of the RA/Sec. 504 Notice and the ADA; and their deliberate indifference frustrated the remedial function and intent of 28 CFR §42.505(f)(1); and

(b) the head of OCA and the ADA Coordinator made a responsive decision not to cooperate with me when I reached out for help, and in this way, they thwarted the interactive function and intent of the RA/Sec. 504 Notice and the ADA and the mandate of 28 CFR §42.505(f)(1) when its remedial function and intent mattered urgently to me as a litigant with disabilities; and

(c) the head of OCA and the ADA Coordinator violated 28 CFR §35.130(b)(7)(i) ["... public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination

on the basis of disability …"] and 28 CFR §35.130(b)(8)

["...public entity shall not impose or apply eligibility criteria

that screen out or tend to screen out an individual with a

disability … from fully and equally enjoying any service,

program, or activity"] which are complementary with 28 CFR

§42.503(b)(3) [utilize criteria or methods of administration];

and

(d) the head of OCA and the ADA Coordinator violated the

complementary legal mandates of 28 CFR part 35, 28 CFR

part 42, NYSHRL and NYCHRL; and

(e) the head of OCA and the ADA Coordinator violated the

express warranty UCS posted in compliance with 28 CFR

§42.505(f)(1).

132. In August 2022, Judge Marks and Mr. Sullivan harmed me by

failing in duties to provide <u>continuing</u> notice and training for staff

and judges about personal, individual <u>affirmative</u> and <u>prophylactic</u>

responsibilities in effectuating the purpose of the RA/Sec. 504

Coordinator and the ADA; moreover, their inaction undermined

the <u>interactive</u> function of 28 CFR §42.505(f)(1), which

consequently violated the express warranty UCS is presumed to

have posted in compliance with 28 CFR §42.505(f)(1).

133.  In September 2022, the UCS, Judge Marks and Mr. Sullivan harmed me by failing in <u>responsive</u> duties when I tried to do what the DOJ regulations guided me to do; moreover, their inaction frustrated the <u>interactive</u> function of 28 CFR §42.505(f)(1) which consequently violated the express warranty UCS is presumed posted somewhere in compliance with 28 CFR §42.505(f)(1).

## 10th Cause re RA/Sec 504 coordinator

134. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

135. The RA/Sec 504 Coordinator mandated by 28 CFR §42.505(d) is an inextricable and <u>continuing</u> element of the program, activities, services and benefits of the UCS; and as such, NY UCC §2-313(2) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

136. The RA/Sec 504 Coordinator mandated by 28 CFR §42.505(d) is a <u>continuing</u> affirmation of fact or promise, and it thus creates an express warranty that the UCS program shall conform to the affirmation or promise; and as such, NY UCC

§2-313(1)(a) defines the "coordinator" as an express warranty about program access for litigants with disabilities, including me.

137. The RA/Sec 504 Coordinator mandated by 28 CFR §42.505(d) is a <u>continuing</u> UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

138. Judge Marks and Mr. Sullivan harmed me by failing in <u>affirmative</u> <u>prophylactic</u> duties to provide timely, meaningful and <u>continuing</u> notice and training for UCS staff about the <u>affirmative</u> and <u>prophylactic</u> function of the RA/Sec. 504 Coordinator and the ADA, which undermines the <u>interactive</u> function and intent of 28 CFR §42.505(d); and my experience with UCS staff, Chief Clerk Razzaq, Mr. Sullivan, Judge Marks and Judge Ferdinand informs my understanding of the harms they each individually and together caused.

139. The UCS, Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

(a) the head of OCA and the ADA Coordinator made

<u>affirmative</u> decisions when they chose not to provide timely,

meaningful and <u>continuing</u> notice and training for UCS staff

about the <u>interactive</u> function and intent of the RA/Sec. 504

Coordinator and the ADA; and their deliberate indifference

frustrated the <u>remedial</u> function and intent of 28 CFR

§42.505(d); and

(b) the head of OCA and the ADA Coordinator made a

<u>responsive</u> decision not to cooperate with me when I

reached out for help, and in this way, they thwarted the

<u>interactive</u> function and intent of the RA/Sec. 504

Coordinator and the ADA and the mandate of 28 CFR

§42.505(d) when its <u>remedial</u> function and intent mattered

urgently to me as a litigant with disabilities; and

(c) the head of OCA and the ADA Coordinator violated 28

CFR §35.130(b)(7)(i) ["... public entity shall make

reasonable modifications in policies, practices, or procedures

when the modifications are necessary to avoid discrimination

on the basis of disability …"] and 28 CFR §35.130(b)(8)

["...public entity shall not impose or apply eligibility criteria

that screen out or tend to screen out an individual with a

disability … from fully and equally enjoying any service, program, or activity"] which are complementary with 28 CFR §42.503(b)(3) [utilize criteria or methods of administration]; and

(d) the head of OCA and the ADA Coordinator violated the complementary legal mandates of 28 CFR part 35, 28 CFR part 42, NYSHRL and NYCHRL; and

(e) the head of OCA and the ADA Coordinator violated the express warranty UCS posted in compliance with 28 CFR §42.505(d).

140. In August 2022, Judge Marks and Mr. Sullivan harmed me by failing in duties to provide <u>continuing</u> notice and training for staff and judges about personal, individual <u>affirmative</u> and <u>prophylactic</u> responsibilities in effectuating the purpose of the RA/Sec. 504 Coordinator and the ADA; moreover, their inaction undermined the <u>interactive</u> function of 28 CFR §42.505(d), which consequently violated the express warranty of the UCS notice about the "coordinator" which is presumed to have posted somewhere in compliance with 28 CFR §42.505(d).

141. In September 2022, the UCS, Judge Marks and Mr. Sullivan harmed me by failing in <u>responsive</u> duties when I tried to do what

the DOJ regulations guided me to do; and their inaction frustrated the <u>interactive</u> function and intent of 28 CFR §42.505(d); and they violated the express warranty of the UCS notice about the "coordinator" which is presumed to have posted in compliance with 28 CFR §42.505(d).

## 11th Cause re RA/Sec 504 grievance process

142. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

143. The RA/Sec 504 grievance process mandated by 28 CFR §42.505(e) is an inextricable and <u>continuing</u> element of the program, activities, services and benefits of the UCS; and as such, NY UCC §2-313(2) defines this "grievance process" as an express warranty about program access for litigants with disabilities, including me.

144. The RA/Sec 504 grievance process mandated by 28 CFR §42.505(e) is a <u>continuing</u> affirmation of fact or promise, and it thus creates an express warranty that the UCS program shall conform to the affirmation or promise; and as such, NY UCC §2-313(1)(a) defines the "grievance process" as an express

warranty about program access for litigants with disabilities, including me.

145. The RA/Sec 504 grievance process mandated by 28 CFR §42.505(e) is a <u>continuing</u> UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines this "grievance process" as an express warranty about program access for litigants with disabilities, including me.

146. Judge Marks and Mr. Sullivan harmed me by failing in <u>affirmative</u> <u>prophylactic</u> duties to provide timely, meaningful and <u>continuing</u> notice and training for UCS staff about the <u>affirmative</u> and <u>prophylactic</u> function of the RA/Sec. 504 grievance process and the ADA, which undermines the <u>interactive</u> function and intent of 28 CFR §42.505(e); and my experience with UCS staff, Chief Clerk Razzaq, Mr. Sullivan, Judge Marks and Judge Ferdinand informs my understanding of the harms they each individually and together caused.

147. The UCS, Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

(a) the head of OCA and the ADA Coordinator made <u>affirmative</u> decisions when they chose not to provide timely, meaningful and <u>continuing</u> notice and training for UCS staff about the <u>interactive</u> function and intent of the RA/Sec. 504 grievance process and the ADA; and their deliberate indifference frustrated the <u>remedial</u> function and intent of 28 CFR §42.505(e); and

(b) the head of OCA and the ADA Coordinator made a <u>responsive</u> decision not to cooperate with me when I reached out for help, and in this way, they thwarted the <u>interactive</u> function and intent of the RA/Sec. 504 grievance process and the ADA and the mandate of 28 CFR §42.505(e) when its <u>remedial</u> function and intent mattered urgently to me as a litigant with disabilities; and

(c) the head of OCA and the ADA Coordinator violated 28 CFR §35.130(b)(7)(i) and 28 CFR §35.130(b)(8) which are complementary with 28 CFR §42.503(b)(3); and

(d) the head of OCA and the ADA Coordinator violated the complementary legal mandates of 28 CFR part 35, 28 CFR part 42, NYSHRL and NYCHRL; and

(e) the head of OCA and the ADA Coordinator violated the

express warranty UCS posted in compliance with 28 CFR

§42.505(e).

148. In August 2022, Judge Marks and Mr. Sullivan harmed me by

failing in duties to provide <u>continuing</u> notice and training for staff

and judges about personal, individual <u>affirmative</u> and <u>prophylactic</u>

responsibilities in effectuating the purpose of the RA/Sec. 504

grievance process and the ADA; moreover, their inaction

undermined the <u>interactive</u> function of 28 CFR §42.505(e), which

consequently violated the express warranty of the UCS notice

about the "grievance process" which is presumed to have posted

somewhere in compliance with 28 CFR §42.505(e).

149. In September 2022, the UCS, Judge Marks and Mr. Sullivan

harmed me by failing in <u>responsive</u> duties when I tried to do what

the DOJ regulations guided me to do; and their inaction frustrated

the <u>interactive</u> function and intent of 28 CFR §42.505(d); and

they violated the express warranty of the UCS notice about the

"grievance process" which is presumed to have posted in

compliance with 28 CFR §42.505(e).

## 12th Cause re RA/Sec. 504 & ADA self-examinations

150. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

151. The UCS self-evaluation mandated by the RA/Sec. 504 in the early 1970s at 28 CFR §42.505(c)(1)-(2) is an inextricable and continuing element of the program, activities, services and benefits of the UCS for court users with disabilities in 2019-2022 because of the words "*and thereafter the recipient shall take any necessary remedial steps to eliminate the effects of discrimination that resulted from adherence*" to long-standing, well-settled, business-as-usual policies and practices; and as such, NY UCC §2-313(2) defines these "self-examinations" as an express warranty about program access for litigants with disabilities, including me.

> A recipient shall … evaluate and modify its policies and practices that do not meet the requirements of this subpart … *and thereafter the recipient shall take any necessary remedial steps to eliminate the effects of discrimination that resulted from adherence to these policies and practices*. [emphasis added with italics and underlining] 28 CFR §42.505(c)(1)

152. The UCS self-examination mandated by the ADA in the early 1990s at 28 CFR §35.105 is an inextricable and continuing

element of the program, activities, services and benefits of the

UCS for court users with disabilities in 2019-2022 because of the

meaning of the words "*and _thereafter_ the recipient shall take any*

*necessary _remedial steps_ to eliminate _the effects of discrimination_*

*_that resulted from adherence_*" at 28 CFR §42.505(c)(1) the

context established by 28 CFR §35.105(d) and 28 CFR

§35.103(a); and as such, NY UCC §2-313(2) defines these

"self-examinations" as an express warranty about program access

for litigants with disabilities, including me.

> If a public entity has already complied with the
> self-evaluation requirement of a regulation implementing
> section 504 of the Rehabilitation Act of 1973, then the
> requirements of this section shall apply only to those policies
> and practices that were not included in the previous
> self-evaluation. 28 CFR §35.105(d)
> Except as otherwise provided in this part, *this part shall not*
> *be construed to apply a _lesser standard than the standards_*
> *_applied under title V of the Rehabilitation Act of 1973_* (29
> USC 791) or the regulations issued by Federal agencies
> pursuant to that title.  [emphasis added with italics and
> underlining] 28 CFR §35.103(a)

153. The UCS self-evaluation mandated by the RA/Sec. 504 at 28

CFR §42.505(c) and the subsequent self-examination mandated

by the ADA at 28 CFR §35.105 are affirmations of fact or

promise, and they thus create _continuing_ express warranties that

the UCS program shall conform to the affirmation or promise; and as such, NY UCC §2-313(1)(a) defines these "self-evaluations" as express warranties about program access for litigants with disabilities, including me.

154. The UCS self-evaluation mandated by the RA/Sec. 504 at 28 CFR §42.505(c) and the subsequent self-examination mandated by the ADA at 28 CFR §35.105 are UCS program descriptions which create <u>continuing</u> express warranties that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines these "self-evaluations" as an express warranty about program access for litigants with disabilities, including me.

155. The UCS self-evaluation mandated by the RA/Sec. 504 at 28 CFR §42.505(c) and the subsequent self-examination mandated by the ADA at 28 CFR §35.105 were intended to be construed as a floor below which <u>continuing</u> future compliance with the <u>remedial</u> purpose of federal disability rights laws cannot fall pursuant 28 CFR §35.103(a); and subsequent amendments of the RA/Sec. 504 and the ADA emphasize the expansive and <u>continuing</u>, uninterrupted intent of both of the laws revisited by Congress.

156. Judge Marks and Mr. Sullivan harmed me by by failing in
<u>affirmative</u> and <u>prophylactic duties</u> to provide timely, meaningful
and <u>continuing</u> notice and training for UCS staff and judges about
context-defining UCS self-evaluation baselines which were
documented and presumably archived in compliance with 28 CFR
§42.505(c) nearly 50 years ago and in compliance with 28 CFR
§35.105 a little over 30 years ago.

157.  Judge Marks and Mr. Sullivan harmed me by failing in
<u>affirmative</u> and  <u>prophylactic</u> duties to provide timely, meaningful
and <u>continuing</u> notice and training for UCS staff about the
<u>affirmative</u> and <u>prophylactic</u> function of the RA/Sec. 504
self-evaluation and the ADA self-evaluation, which undermines
the <u>remedial</u> function and intent of 28 CFR §42.505(c) and 28
CFR §35.105; and the failures of necessary <u>interactive</u>
cooperation on the part of UCS staff, Chief Clerk Razzaq, Mr.
Sullivan, Judge Marks and Judge Ferdinand informs my
understanding of the harms they each individually and together
caused in violation of express warranties created by UCS's
compliance with 28 CFR §42.505(f)(1) and 28 CFR §35.106.

158.  Judge Marks and Mr. Sullivan harmed me by failing in
<u>affirmative</u> and <u>prophylactic</u> duties to provide timely, meaningful

and <u>continuing</u> notice and training for UCS staff about the context-defining RA/Sec. 504 self-evaluation baselines which DOJ regulations expressly incorporated into the follow-up ADA self-evaluation baselines; and the cumulative actions and inaction of the 11 Chief Administrative Judges since 1974 undermined the <u>interactive</u> function and <u>remedial</u> intent of two Congresses which emphasized the importance of self-evaluation with redundant repetition.

159. The UCS, Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

(a) the head of OCA and the ADA Coordinator made <u>affirmative</u> decisions when they chose not to provide timely, meaningful and <u>continuing</u> notice and training for UCS staff and judges about the RA/Sec. 504 self-evaluation baselines and its relationships with the ADA self-evaluation baselines, and their deliberate indifference frustrated the <u>interactive</u> function and <u>remedial</u> intent of the self-evaluations mandated by 28 CFR §42.505(c) and 28 CFR §35.105; and

(b) the head of OCA and the ADA Coordinator made a <u>responsive</u> decision not to cooperate with me when I

reached out for help by e-mailing grievances to Judge Marks

and Mr. Sullivan; and in so-doing, they thwarted the effects

of context-defining UCS self-evaluation baselines mandated

by 28 CFR §42.505(c) and 28 CFR §35.105 when the

function and intent mattered urgently to me as a litigant

with disabilities in 2019-2022

> • Amended Grievance re Civil Court of New York City
> Chief Clerk Alia Razzaq, the Civil Court of the City of
> New York (NYC Civil Court) and the Manhattan Housing
> Court; and
>
> • Grievance re Unified Court System (UCS) ~~Official~~
> Officer of the Court Matthew Chenoweth, the Civil Court
> of the City of New York (NYC Civil Court) and the
> Manhattan Housing Court; and
>
> • Amended grievance re Unified Court System (UCS)
> Statewide ADA Coordinator John Sullivan and the Hon.
> Lawrence Marks, UCS Chief Administrative Judge and
> the UCS Office of Court Administration; and
>
> • Grievance re the Hon. Tracey Ferdinand, NYC Housing
> Court, and the Hon. Lawrence Marks, UCS Chief
> Administrative Judge and the UCS Office of Court
> Administration; and

(c) the head of OCA and the ADA Coordinator violated 28

CFR §35.130(b)(7)(i) and 28 CFR §35.130(b)(8) which are

complementary with 28 CFR §42.503(b)(3); and

(d) the head of OCA and the ADA Coordinator violated the

complementary legal mandates of 28 CFR part 35, 28 CFR

part 42, NYSHRL and NYCHRL; and

(e) the head of OCA and the ADA Coordinator violated the

express warranty UCS posted in compliance with the

self-evaluations mandated by 28 CFR §42.505(c) and 28

CFR §35.105.

160. In August 2022, Judge Marks and Mr. Sullivan harmed me by

failing in duties to provide <u>continuing</u> notice and training for staff

and judges about personal, individual <u>affirmative</u> and <u>prophylactic</u>

responsibilities in effectuating the purpose of the RA/Sec. 504

self-evaluation process and the ADA self-evaluation process;

moreover, their inaction undermined the <u>interactive</u> function of 28

CFR §42.505(c) and 28 CFR §35.105, which consequently

violated the express warranty of the UCS notice about the

"self-evaluation" which is presumed to have been made available

for public inspection and review in compliance with  28 CFR

§42.505(c) and 28 CFR §35.105.

161. In September 2022, the UCS, Judge Marks and Mr. Sullivan

harmed me by failing in <u>responsive duties</u> when I tried to do what

DOJ regulations guided me to do by sending an e-mail to the ADA

Coordinator with a copy to the head of the OCA; and the

non-responsive reply frustrated the <u>interactive</u> function of 28 CFR

§42.505(c) and 28 CFR §35.105.  In effect, Mr. Sullivan and the

judge acted to ensure that the baseline of the self-evaluations

mandated by 28 CFR §42.505(c) and 28 CFR §35.105 were

devalued to the point of meaninglessness; and they violated the

express warranty UCS posted in compliance with 28 CFR

§42.505(c) and 28 CFR §35.105.


**13th Cause re ADA notice**

162. Plaintiff realleges and incorporates in this Cause of Action all

previous paragraphs of this Complaint.

163. The Notice mandated by 28 CFR §35.106 in a context

established at 28 CFR §35.103(a), is an inextricable amd

<u>continuing</u> element of the program, activities, services and

benefits of the UCS — with special emphasis on the meaning of

the verb "to assure" in the final clause; and as such, NY UCC

§2-313(2) defines the "notice" as an express warranty about

program access for litigants with disabilities, including me.

> A public entity shall make available to … participants,
> beneficiaries, and other interested persons information …
> necessary to apprise such persons of the *protections against*

*discrimination assured them by the Act* and this part. [emphasis added with *italics*] 28 CFR §35.106

164. The Notice mandated by the verb "to assure" in 28 CFR §35.106 is a <u>continuing</u> affirmation of fact or promise, and it thus creates an express warranty that the UCS program shall conform to the affirmation or promise; and as such, NY UCC §2-313(1)(a) defines the "notice" as an express warranty about program access for litigants with disabilities, including me.

165. The Notice mandated by the verb "assure" in 28 CFR §35.106 is a <u>continuing</u> UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines the "notice" as an express warranty about program access for litigants with disabilities, including me.

166. Judge Marks and Mr. Sullivan harmed me by failing in <u>affirmative</u> <u>prophylactic</u> duties to provide timely, meaningful and <u>continuing</u> notice and training for UCS staff about the <u>affirmative</u> and <u>prophylactic</u> function of the ADA Notice and RA/Sec. 504, which undermines the <u>interactive</u> function and <u>remedial</u> intent of 28 CFR  §35.106; and my experience with UCS staff, Chief Clerk Razzaq, Mr. Sullivan, Judge Marks and Judge Ferdinand informs

my understanding of the harms they each individually and together caused.

167. Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

(a) the head of OCA and the ADA Coordinator made affirmative decisions when they chose not to provide timely, meaningful and continuing notice and training for UCS staff about the interactive function and intent of the ADA Notice and RA/Sec. 504; and their deliberate indifference frustrated the remedial function and intent of 28 CFR §35.106; and

(b) the head of OCA and the ADA Coordinator made a responsive decision not to cooperate with me when I reached out for help, and in this way, they thwarted the interactive function and intent of the ADA Notice and RA/Sec. 504 and the mandate of 28 CFR §35.106 when its remedial function and intent mattered urgently to me as a litigant with disabilities; and

(c) the head of OCA and the ADA Coordinator violated 28 CFR §35.130(b)(7)(i) ["... public entity shall make reasonable modifications in policies, practices, or procedures

when the modifications are necessary to avoid discrimination on the basis of disability …"] and 28 CFR §35.130(b)(8) ["...public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability … from fully and equally enjoying any service, program, or activity"] which are complementary with 28 CFR §42.503(b)(3) [utilize criteria or methods of administration]; and

(d) the head of OCA and the ADA Coordinator violated the complementary legal mandates of 28 CFR part 35, 28 CFR part 42, NYSHRL and NYCHRL; and

(e) the head of OCA and the ADA Coordinator violated the express warranty UCS posted in compliance with 28 CFR §35.106.

168. In August 2022, Judge Marks and Mr. Sullivan harmed me by failing in duties to provide continuing notice and training for staff and judges about personal, individual affirmative and prophylactic responsibilities in effectuating the purpose of the ADA Notice and the RA/Sec. 504; moreover, their inaction undermined the interactive function of 28 CFR §35.106 within the context-defining ambit of 28 CFR §42.505(c)(1), which consequently violated the

express warranty UCS created by posting a notice in compliance with 28 CFR §35.106.

169. In September 2022, Judge Marks and Mr. Sullivan harmed me by failing in <u>responsive</u> duties when I tried to do what DOJ regulations guided me to do by sending an e-mail to the ADA Coordinator with a copy to the head of the OCA; moreover, their inaction undermined the <u>interactive</u> function of 28 CFR §35.106 within the context-defining ambit of 28 CFR §42.505(c)(1), which consequently violated the express warranty UCS created by posting a notice in compliance with 28 CFR §35.106.

**14th Cause re ADA Coordinator**

170. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

171. The ADA Coordinator mandated by 28 CFR §35.107(a) is an inextricable and <u>continuing</u> element of the program, activities, services and benefits of the UCS; and as such, NY UCC §2-313(2) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

172. The ADA Coordinator mandated by 28 CFR §35.107(a) is a <u>continuing</u> affirmation of fact or promise, and it thus creates an

express warranty that the UCS program shall conform to the affirmation or promise; and as such, NY UCC §2-313(1)(a) defines the "coordinator" as an express warranty about program access for litigants with disabilities, including me.

173. The ADA Coordinator mandated by 28 CFR §35.107(a) is a continuing UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

174. Judge Marks and Mr. Sullivan harmed me by failing in affirmative and  prophylactic duties to provide timely, meaningful and continuing notice and training for UCS staff about the affirmative and prophylactic function of the ADA Coordinator and RA/Sec. 504, which undermines the interactive function and intent of 28 CFR §35.107(a); and my experience with UCS staff, Chief Clerk Razzaq, Mr. Sullivan, Judge Marks and Judge Ferdinand informs my understanding of the harms they each individually and together caused.

175. The UCS, Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

(a) they acted affirmatively in choosing not to provide timely, meaningful and <u>continuing</u> notice and training for UCS staff about the <u>interactive</u> function and intent of the ADA Coordinator and RA/Sec. 504; and their deliberate indifference frustrated the <u>remedial</u> function and intent of 28 CFR §35.107(a); and

(b) they failed to act responsively when I reached out for help, and in this way, they thwarted the <u>interactive</u> function and intent of the ADA Coordinator and RA/Sec. 504 and the mandate of 28 CFR §35.107(a) when its <u>remedial</u> function and intent mattered urgently to me as a litigant with disabilities; and

(c) they violated 28 CFR §35.130(b)(7)(i) and 28 CFR §35.130(b)(8) which are complementary with 28 CFR §42.503(b)(3); and

(d) they violated the complementary legal mandates of 28 CFR part 35, 28 CFR part 42, NYSHRL and NYCHRL; and

(e) they violated the express warranty UCS posted in

compliance with 28 CFR §35.107(a).

176. In August 2022, Judge Marks and Mr. Sullivan harmed me by

failing in duties to provide <u>continuing</u> notice and training for staff

and judges about personal, individual <u>affirmative</u> and <u>prophylactic</u>

responsibilities in effectuating the purpose of the ADA Coordinator

and RA/Sec. 504; moreover, their inaction undermined the

<u>interactive</u> function of 28 CFR §35.107(a) within the

context-defining ambit of 28 CFR §42.505(c)(1), which

consequently violated the express warranty of the UCS notice

about the "coordinator" which is presumed to have posted

somewhere in compliance with 28 CFR §35.107(a).

177. In September 2022, the UCS, Judge Marks and Mr. Sullivan

harmed me by failing in <u>responsive</u> duties when I tried to do what

the DOJ regulations guided me to do; and their inaction frustrated

the <u>interactive</u> function and intent of 28 CFR §35.107(a) within

the context-defining ambit of 28 CFR §42.505(c)(1); and they

violated the express warranty of the UCS notice about the

"coordinator" which is presumed to have posted in compliance

with 28 CFR §35.107(a).

**15th Cause re ADA grievance process**

178. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

179. The ADA grievance process mandated by 28 CFR §35.107(b) is an inextricable and <u>continuing</u> element of the program, activities, services and benefits of the UCS; and as such, NY UCC §2-313(2) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

180. The ADA grievance process mandated by 28 CFR §35.107(b) is a <u>continuing</u> UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(a) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

181. The ADA grievance process mandated by 28 CFR §35.107(b) is a <u>continuing</u> UCS program description which creates an express warranty that the activities, services and benefits shall conform to the description; and as such, NY UCC §2-313(1)(b) defines this "coordinator" as an express warranty about program access for litigants with disabilities, including me.

182.  Judge Marks and Mr. Sullivan harmed me by failing in affirmative and  prophylactic duties to provide timely, meaningful and continuing notice and training for UCS staff about the affirmative and prophylactic function of the ADA grievance process and RA/Sec. 504, which undermines the interactive function and intent of 28 CFR §35.107(b); and my experience with UCS staff, Chief Clerk Razzaq, Mr. Sullivan, Judge Marks and Judge Ferdinand informs my understanding of the harms they each individually and together caused.

183.  Judge Marks and Mr. Sullivan orchestrated a pattern and practice of unlawful discrimination, harming me in legally distinct ways:

> (a) they acted affirmatively in choosing not to provide timely, meaningful and continuing notice and training for UCS staff about the interactive function and intent of the ADA grievance process and RA/Sec. 504; and their deliberate indifference frustrated the remedial function and intent of 28 CFR §35.107(b); and

> (b) they failed to act responsively when I reached out for help, and in this way, they thwarted the interactive function and intent of the ADA grievance process and RA/Sec. 504

and the mandate of 28 CFR §35.107(b) when its <u>remedial</u>

function and intent mattered urgently to me as a litigant

with disabilities; and

(c) they violated 28 CFR §35.130(b)(7)(i) and 28 CFR

§35.130(b)(8) which are complementary with 28 CFR

§42.503(b)(3); and

(d) they violated the complementary legal mandates of 28

CFR part 35, 28 CFR part 42, NYSHRL and NYCHRL; and

(e) they violated the express warranty UCS posted in

compliance with 28 CFR §35.107(b).

184. In August 2022, the UCS, Judge Marks and Mr. Sullivan

harmed me by failing in <u>affirmative</u> and <u>prophylactic</u> duties to

provide notice and training for staff and judges about the

mandates of the ADA grievance process and the RA/Sec. 504,

which thwarted the <u>interactive</u> function of 28 CFR §35.107(b)

within the context-defining ambit of 28 CFR §42.505(c)(1); and

they violated the express warranty UCS posted in compliance with

28 CFR §35.107(b).

185. In September 2022, the UCS, Judge Marks and Mr. Sullivan

harmed me by failing in <u>responsive duties</u> when I tried to do what

the notice told me to do, which frustrated the interactive function

and intent of 28 CFR §35.107(b) within the context-defining ambit of 28 CFR §42.505(c)(1); and they violated the express warranty UCS posted in compliance with 28 CFR §35.107(b).

## 16th Cause re NYS Human Rights Law

186. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

187. The OCA, Judge Marks, Chief Clerk Razzaq, Judge Ferdinand, John Sullivan, John Doe and Dennis Kehoe are each a "necessary party" as defined by NYS Exec. Law §292.16.

188. The OCA, Judge Marks, Chief Clerk Razzaq, Judge Ferdinand, John Sullivan and John Doe have contrived, nurtured and maintained a pattern and practice of "unlawful discriminatory practices" as defined by NYSHRL at NY Exec. Law §296.2(a), which brings complementary State law focus to the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR part 42, subpart G and Title II of the ADA at 28 CFR part 35.

189. The affirmative and cumulative actions and responsive inaction of the OCA, Judge Marks, Chief Clerk Razzaq, Judge Ferdinand, John Sullivan and John Doe frustrated my need for

interactive processes for determining reasonable accommodation, and these actions and inaction are "discriminatory practices" as defined by NYSHRL at NY Exec. Law § 296.2(c)(i)-(ii), which brings complementary State law focus to the remedial purpose and scope of regulations implementing the RA/Sec. 504 at 28 CFR part 42, subpart G and Title II of the ADA at 28 CFR part 35.

## 17th cause re NYC Human Rights Law

190. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

191.  The OCA, Judge Marks, Chief Clerk Razzaq, Judge Ferdinand, John Sullivan and John Doe have contrived, nurtured and maintained a pattern and practice of "unlawful discriminatory practices" as defined by NYC Code §8-102 and NYC Code §8-102 (15)-(17), which brings complementary municipal law focus to the remedial purpose and scope of regulations implementing the the RA/Sec. 504 at 28 CFR part 42, subpart G and Title II of the ADA at 28 CFR part 35.

192.  The affirmative and cumulative actions and responsive inaction of the OCA, Judge Marks, Chief Clerk Razzaq, Judge Ferdinand, John Sullivan and John Doe frustrated my need for

interactive processes for determining "reasonable accommodation" as defined by NYC Code §8-102, which brings complementary municipal law focus to the remedial purpose and scope of regulations implementing the the RA/Sec. 504 at 28 CFR part 42, subpart G; and Title II of the ADA at 28 CFR part 35.

**18th cause re disability discrimination**

193. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

194. The UCS Defendants' effective denials of an interactive process for determining reasonable accommodations and modifications of procedures for a RA/Sec. 504-qualified litigant with handicaps and an ADA-qualified litigant with disabilities are serial and cumulative instances of deliberate indifference.

195.  The UCS Defendants' deliberate indifference to compliance with the RA/Sec. 504 for a period of 49 years after it was enacted is made worse by its perverse indifference to the ADA for a period of 32 years after it was signed into law; and the UCS Defendant's long-term pattern and practice of intentional discrimination is exacerbated further by its deliberate indifference to the

"prophylactic" and "affirmative" mandates of *Tennessee v. Lane* more than 18 years after the US Supreme Court clarified the scope and remedial mandate of federal disability rights laws.

196. The UCS Defendants' deliberate indifference to the needs of a litigant with handicaps and disabilities was heedless to the disparate impact on Plaintiff's opportunity to participate in the program of the UCS and to litigate the case against him.

197.  The UCS Defendants' effective denials of reasonable accommodation are unlawful discrimination with on-going consequences which prevent Plaintiff from participating in the services and enjoying the benefits of the UCS in a manner equivalent to non-disabled people.

198.  A disabiity discrimination cause of action is created RA/Sec. 504 and by regulations implementing the Act at 28 CFR part 42.

199. A disability discrimination cause of action is created by Title II of the ADA and by regulations implementing the Act at 28 CFR part 35.

200. A disability discrimination cause of action is created by *Tennessee v. Lane*.

## 19th cause re due process

201. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

202. The US's Defendants' failure to provide a timely, meaningful procedure through which Plaintiff can protect his valuable property and liberty interests violates the Fourteenth Amendment to the US Constitution.

203.  A due process cause of action is created by 42 USC §1983.


## 20th cause re equal protection

204. Plaintiff realleges and incorporates in this Cause of Action all previous paragraphs of this Complaint.

205. The US's Defendants' willful failure to provide a timely, meaningful procedure through which Plaintiff can effectively participate in legal proceedings and interpose legal defenses to the claims in the same manner as able-bodied litigants violates the Equal Protection Clause of the US Constitution.

206.  An equal protection cause of action is created by 42 USC §1983.

**RELIEF REQUESTED**

207. Plaintiff requests that this Court issue an Order and Judgment declaring that UCS' Defendants' failure to reasonably accommodate Plaintiff's disabilities violates

(a) Section 504 of the Rehabilitation Act of 1973 (RA or Sec. 504), 29 USC §794, *et seq*., as amended and as clarified by the US Supreme Court in *Tennessee, supra*; and

(b) Title II of the Americans with Disabilities Act of 1990 (ADA), 42 USC §12131, *et seq*., as amended; and by regulations implementing the Act at 28 CFR part 35 and as clarified by the US Supreme Court in *Goldberg supra* and *Tennessee, supra*; and

(c) the due process clause of the Fourteenth Amendment to the US Constitution; and

> No state shall … enforce any law which shall abridge the privileges … of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

(d) the equal protection clause of the Fourteenth Amendment to the US Constitution.

> No state shall … enforce any law which shall abridge the privileges … of citizens of the United States; nor

shall any state … deny to any person within its
jurisdiction the equal protection of the laws.

208. Plaintiff requests that this Court issue a Temporary

Injunction pausing all proceedings in *Kehoe v. Davidson* until

after UCS complies with 28 CFR part 42 and 28 CFR part 38  –

that is, a pause until UCS acts on my requests for interactive

processes for determining reasonable accommodation which are

now needed more desperately than in December 2019.

209. Plaintiff requests that this Court issue a Declaratory

Judgment stating that the UCS has intentionally discriminated

against me by neglecting affirmative, prophylactic and responsive

duties to court users who need accommodations and

modifications of procedures in order to have meaningful program

access.

210. Plaintiff requests that this Court issue a Declaratory

Judgment stating that the UCS has shown deliberate indifference

to compliance with 28 CFR part 42, subpart G; 28 CFR part 42,

subpart I; and 28 CFR part 35.

211. Plaintiff requests that this Court issue a Permanent

Injunction requiring the UCS to develop verifiable, transparent

and effective policy, procedures, processes, staff training and

training programs for judges which are needed to ensure timely, meaningful program access for people with disabilities, including me.

212. Plaintiff requests that this Court issue a permanent injunction requiring the UCS to develop verifiable employee notice and training programs for UCS staff and judges about the statutory and contractual duties of New York Courts to court users with disabilities.

213. Plaintiff requests that this Court issue to monitor UCS compliance to ensure something good actually happens – not just superficial lip service and the intentional discrimination evidenced by the words posted today in UCS online webpages.

214. Awarding Plaintiff damages for the injuries and expenses incurred as a result of the UCS' violations of law.

215. Awarding the Estate of Ursula Beauseigneur damages for the injuries and expenses incurred as a result of the UCS' violations of law.

216.  Awarding Plaintiff attorneys' fees and Court costs pursuant to 29 USC §12205 [Attorneys' fees]; and 29 USC §794a(b) [Remedies and attorneys' fees]; and 29 USC §1988 [Proceedings in vindication of civil rights].

217. Granting such further and other relief as this Court deems

just and proper.


Dated: October 17, 2022                    Respectfully submitted,
       New York, New York
                                           /s/ Ronald Davidson

                                           Ronald Davidson
                                           531 Main Street, Apt. 217
                                           New York, New York 10044
                                           929-286-3362
                                           ron.center2019@gmail.com

DAVISON v OCA *et al.*, _____ Civ. _____

# COMPLAINT
## List of sections

Preliminary statement ……………..…………………………..…...…....…  1

Jurisdiction ……………………………………………..….……………  9

Venue ……………………………………………………………….…..  10

Parties ………………………………………………………………..…  10

Enacted findings of Congress = context ……………………………  18

Procedural facts = context …………………………..………………..  20

Genesis of complaint ……………………………..……..…...  21

1st cause re systematic indifference ………………………..……  21

2nd cause re housing court judge hamstrung by UCS ...……..  25

3rd cause re "ambush" by officer of the court …………..……...  28

4th cause re indifference of Chief Clerk Razzaq …………..…….  34

5th cause re inadequate interactive process …………..………  45

6th cause re discriminatory venue creation …………..…………  49

7th cause re effective denial of program access …...…..………  53

8th cause re "weaponizing" disability ……………………………  55

9th cause re RA/Sec. 504 notice ………………………………….  58

10th cause re RA/Sec. 504 coordinator ……………………….…  62

11th cause re RA/Sec. 504 grievance process ………………..…  66

12th cause re RA/Sec. 504 & ADA self-examinations ………..…  70

13th cause re ADA notice ………………………………..…..…  77

14th cause re ADA coordinator ……………………………....…  81

15th cause re ADA grievance process ……………………......…...  85

16th cause re NYS Human Rights Law ……………………………  88

17th cause re NYC Human Rights Law ……………………………  89

18th cause re disability discrimination ……………………………  90

19th cause re due process ……………………………………..…  92

20th cause re equal protection ……………………………..….  92

RELIEF REQUESTED …………………………………………………  93