UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—--------------------------------------x

**MEMO ENDORSED**

_____

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE
DATED: 5-2-2024

Plaintiff's motion to appoint a special maser is denied without prejudice. At this juncture, the Court does not deem it necessary to appoint a special master. Plaintiff should focus on filing his amended complaint, which is due by May 31, 2024. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 73 and 75.

RONALD DAVIDSON, Plaintiff,

   -- against --

OFFICE OF COURT ADMINISTRATION;
HON. JOSEPH ZAYAS;          1:22-cv-08936
HON. LAWRENCE MARKS;          -PGG-VF
JOHN DOE1;
JOHN DOE2;
JOHN DOE3;        MOTION FOR THE
JOHN SULLIVAN;        APPOINTMENT OF
ALIA RAZZAQ;        HON. LOUIS STANTON
        TO BE SPECIAL MASTER
TRACEY FERDINAND;        PER FRCP RULE 53
NORMA JENNINGS;
TRAVIS ARRINDEL;
VANESSA FANG;
FRANCES ORTIZ;        Oral argument and
        expedited hearing
HON. THOMAS DINAPOLI;        requested
KIMBERLY HILL ;
HON. DAWN PINNOCK;

PATRICK KEHOE, Defendants

—--------------------------------------x

1. This is the Plaintiff's second attempt to seek the appointment of a

Special Master because of an "exceptional condition" per Federal Rules

of Civil Procedure (FRCP) Rule 53(a)(1)(B)(i). — see *Plyler v. Doe,* 47

1

US 702, 216 (1982) ["equal protection implicates a presumptively invidious disadvantage affecting "the exercise of a 'fundamental right'"].  — see US Constitution, Article 6, Amendments 1 and 14; and see 75 FR 56164, 56225 (September 15, 2010) re 28 CFR part 35, "Nondiscrimination on the Basis of Disability in State and Local Government Services"

28 CFR §35.160

"The US Department of Justice (DOJ) interprets §35.160 to *require effective communication in courts* … [and] the appropriateness of particular auxiliary aids and services may vary as a situation changes, the Department strongly encourages public entities to do *a <u>communication assessment of the individual with a disability</u> when the need for auxiliary aids and services is first identified, and to reassess communication effectiveness regularly* throughout the communication …. A public entity has *a <u>continuing obligation to assess</u> the auxiliary aids and services it is providing*, and should <u>*consult with individuals with disabilities on a continuing basis*</u> *to assess what measures are required to ensure effective communication*." [emphasis added with *italics* and <u>underlining</u>]  — see bottom of middle column at 75 FR 56225 [PDF p. 62 of 73] https://www.govinfo.gov/content/pkg/FR-2010-09-15/pdf/2010-21821.pdf

2

2. This is the Plaintiff's first application for an Order authorizing the Special Master to have unlimited discretion about *ex parte* communication concerning issues having to do with the Plaintiff's age, disabilities, and requests for interactive processes for identifying meaningful accommodations and modifications of procedures (ECF Nos. 28, 39 and 67); and the functional purposes of the Plaintiff's several requests have been emphasized with redundant repetition when

(a) the <u>*93rd Congress*</u> (January 3, 1971 – January 3, 1973) enacted the Rehabilitation Act of 1973 (RA), Pub. L. 93–112, 87 Stat. 355

(b) the <u>*94th Congress*</u> (January 3, 1975 – January 3, 1977) enacted the Age Discrimination Act of 1975, Pub. L. 94–135, 89 Stat. 713

(c) the <u>*95th Congress*</u> (January 3, 1977 – January 3, 1979) enacted the Rehabilitation Act Amendments of 1978, Pub. L. 95-602, 92 Stat. 2995

(d) the <u>*99th Congress*</u> (January 3, 1985 – January 3, 1987) enacted the Rehabilitation Act Amendments of 1986, Pub. L. 99-506, 100 Stat. 1807

(e) the <u>*100th Congress*</u> (January 3, 1987 – January 3, 1989) enacted the Civil Rights Restoration Act of 1987 (CRRA), Pub. L. 100-259, 102 Stat. 28

(f) the _101st Congress_ (January 3, 1989 – January 3, 1991)

enacted the  Americans with Disabilities Act of 1990 (ADA), Pub.

L. 101-336, 104 Stat. 327

(g) the _104th Congress_ (January 3, 1995 – January 3, 1997)

enacted the Health Insurance Portability and Accountability Act of

1996 (HIPAA), Pub. L. 104–191, 100 Stat 1936

(h) the _110th Congress_ (January 3, 2007 – January 3, 2009)

enacted the  ADA Amendments Act of 2008 (ADAAA), Pub L.

110-325, 122 Stat. 355

(i) the _111th Congress_ (January 3, 2009 – January 3, 2011)

enacted the Patient Protection and Affordable Care Act of 2010

(ACA), Pub. L. 111-148, 124 Stat. 109–1025


3. The Plaintiff's request for the appointment of a Special Master is

consistent with the enacted will of serial Congresses and the assent of

the President of the United States; and it is consistent with the

structural design of regulations implementing related Acts of Congress

chronologically listed _ante_ in paragraph 2; and it is consistent with

prototype regulations promulgated by the US Department of Health,

Education and Welfare (HEW) which have been the law of the land since

1978; and it is consistent with subsequent statutes, executive orders

and regulations which mirror congruent baselines; and it is consistent

4

with words that are published in the Federal Register for all to read,

including someone with cognitive disabilities, e.g.,

(a) 43 FR 2132 (Jan 13, 1978) re 45 CFR part 85, Implementation

of Executive Order 11914, Nondiscrimination on the Basis of

Handicap in Federally Assisted Programs, Coordination of Federal

Agency Enforcement of Section 504 of the Rehabilitation Act of

1973  [PDF p. 19 of 35]

https://archives.federalregister.gov/issue_slice/1978/1/13/2102-2

136.pdf#page=19, e.g.,

(i) 45 CFR §85.51(b)(3) "A recipient may not, directly or

through contractual-or other arrangements, utilize criteria or

methods of administration (i) that have the effect of

subjecting qualified handicapped persons to discrimination on

the basis of handicap, (ii) that have the purpose or effect of

defeating or substantially impairing accomplishment of the

objectives of the recipient's program with respect to

handicapped persons, or (iii) that perpetúate the

discrimination of another recipient if both recipients are

subject to common administrative control or are agencies of

the same state." — see bottom of left column at 43 FR 2138

re General prohibitions against discrimination [PDF p. 25 of

35]

5

https://archives.federalregister.gov/issue_slice/1978/1/13/21
02-2136.pdf#page=25

(ii) 45 CFR §85.53 "A recipient shall make reasonable
accommodation to the known physical or mental limitations
of an otherwise qualified handicapped applicant or employee
unless the recipient can demonstrate that the
accommodation would impose an undue hardship on the
operation of its program. — see middle of right column at 43
FR 2138 re Employment, Reasonable accommodation [PDF p.
25 of 35]

https://archives.federalregister.gov/issue_slice/1978/1/13/21
02-2136.pdf#page=25

(iii) 45 CFR §85.56 "No qualified handicapped person shall,
because a recipient's facilities are inaccessible to or unusable
by handicapped persons, be denied the benefits of, be
excluded from participation in, or otherwise be subjected to
discrimination under any program or activity that receives or
benefits from federal financial assistance."— see bottom of
right column 43 FR 2138 re Program Accessibility [PDF p. 25
of 35]

https://archives.federalregister.gov/issue_slice/1978/1/13/21
02-2136.pdf#page=253

(b) 45 FR 37620 (June 3, 1980) re 28 CFR part 42,

"Nondiscrimination Based on Handicap in Federally Assisted

Programs; Implementation of Section 504 of the Rehabilitation Act

of 1973 and Executive Order 11914, Final Rule" [PDF p. 15 of 59]

https://archives.federalregister.gov/issue_slice/1980/6/3/37576-3

7634.pdf#page=15; and see

> 45 FR 37620, 37630 (June 3, 1980)
>
> "Where the courts provide specialized assistance with respect
>
> to court proceedings, the courts are required to insure that
>
> *handicapped persons are able to participate in such*
>
> *assistance on an equal basis with nonhandicapped persons …*
>
> *for _all phases of the preparation and presentation of the_*
>
> [Plaintiff]*_'s case._*"  [emphasis added with *italics* and
>
> _underlining_]  — see top of right column at 45 FR 37630 [PDF
>
> p. 25 of 59]
>
> https://archives.federalregister.gov/issue_slice/1980/6/3/375
>
> 76-37634.pdf#page=25

(c) 45 FR 72995 (Nov. 4, 1980), US Exec. Order 12250 (EO

12250), ''Leadership and Co-ordination of Nondiscrimination Laws''

(d) 46 FR 40686 (August 11, 1981) re 28 CFR part 41 and

45 CFR part 85, Redesignation and Transfer of Section 504

Guidelines [PDF p. 9 of 10]

https://archives.federalregister.gov/issue_slice/1981/8/11/40678-
40687.pdf#page=9

> (i) 28 CFR §41.51(b)(3), same words as in 45 CFR
>
> §85.51(b)(3) re General prohibitions against discrimination —
>
> see middle of right column at 46 FR 40686 ["The rule will
>
> retitle the present guidelines at 45 CFR Part 85, transfer
>
> them to 28 CFR Part 41, and make necessary nomenclature
>
> changes. Publication of this rule as a proposal for public
>
> comment is unnecessary since *it is solely a redesignation of*
>
> *existing regulations."*] [PDF p. 9 of 10]
>
> https://archives.federalregister.gov/issue_slice/1981/8/11/40
>
> 678-40687.pdf#page=9
>
> (ii) 28 CFR §41.53, same words as in 45 CFR §85.53 re
>
> Employment, Reasonable accommodation — see *Id*.
>
> (iii) 28 CFR §41.56, same word as in 45 CFR §85.56 re
>
> Program Accessibility — see *Id*.

(e) 49 FR 35724 (Sept. 11, 1984) re 28 CFR part 39, Final Rule,
Section-by-Section Analysis and Response To Comments

[PDF p. 122 of 144]

https://www.govinfo.gov/content/pkg/FR-1984-09-11/pdf/FR-198
4-09-11.pdf#page=122

(f) 56 FR 35594 (July 26, 1991) re 28 CFR part 35,

Nondiscrimination on the Basis of Disability in State and Local

Government Services [PDF p. 402 of 516]

https://www.govinfo.gov/content/pkg/FR-1991-07-26/pdf/FR-199

1-07-26.pdf#page=402


(g) 75 FR 56164 (September 15, 2010) re 28 CFR part 35 ["This

final rule revises the regulation of the Department of Justice

(Department) that implements title II of the Americans with

Disabilities Act (ADA), relating to non-discrimination on the basis

of disability in State and local government services … to update or

amend certain provisions of the title II regulation so that they

comport with the Department's _legal and practical experiences in_

_enforcing the ADA_ since 1991."] [emphasis added with _italics_ and

_underlining_] — see top of right column at 75 FR 56164  [PDF p. 1

of 73]

https://www.govinfo.gov/content/pkg/FR-2010-09-15/pdf/2010-2

1821.pdf

   (i) 75 FR 56164, 56224 (September 15, 2010)

      (1)   "… [T]he 'primary consideration' obligation set out

         at §35.160(b)(2) … [and] in the preamble to the 1991

         title II regulation [is] reaffirmed here: 'The public entity

9

shall honor the choice [of the individual with a disability] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under §35.164. *Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication*." 28 CFR part 35, app. A at 580 (2009).  [emphasis added with *italics* and *underlining*]  — see middle of left column at 75 FR 56223 [PDF p. 60 of 73]

https://www.govinfo.gov/content/pkg/FR-2010-09-15/pdf/2010-21821.pdf

(2) "The first sentence in §35.160(b)(2) codifies the axiom that the type of auxiliary aid or service necessary to ensure *effective communication will vary with the situation, and provides factors for consideration in making the determination, including the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place.* Inclusion of this language under title II is

10

consistent with longstanding policy in this area. See,

e.g., *The Americans with Disabilities Act Title II*

*Technical Assistance Manual Covering State and Local*

*Government Programs and Services*, section II–7.1000

[emphasis added with *italics* and *underlining*]  — see

bottom of left column at 75 FR 56223 [PDF p. 60 of 73]

https://www.govinfo.gov/content/pkg/FR-2010-09-15/p

df/2010-21821.pdf

(3) "... [T]he Department has concluded that public

entities sometimes misunderstand the scope of their

obligations under the statute and the regulation. *Section*

*35.160 in the final rule codifies the Department's*

*long-standing policies* in this area and includes

provisions that reflect technological advances in the

area of auxiliary aids and services." [emphasis added

with *italics* and *underlining*]  — see bottom of left

column at 75 FR 56223 [PDF p. 60 of 73]

https://www.govinfo.gov/content/pkg/FR-2010-09-15/p

df/2010-21821.pdf

(ii) 75 FR 56164, 56225 (September 15, 2010)

   "Many commenters urged the Department *to stress the*

*obligation of State and local courts to provide effective*

11

_communication_ …. _The Department cautions public entities that without appropriate auxiliary aids and services, such individuals are_ denied an opportunity to participate fully in the judicial process, _and_ denied benefits of the judicial system that are available to others.

" … The general nondiscrimination provision in §35.130(a) provides that no individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity. _The Department consistently interprets this provision and §35.160_ to require effective communication in courts …. The Department has developed a variety of technical assistance and guidance documents on the requirements for title II entities to provide effective communication; those materials are available on the Department Web site at: http:// www.ada.gov

"…[T]he appropriateness of particular auxiliary aids and services may vary as a situation changes, the Department strongly encourages public entities to do a communication assessment of the individual with a disability when the need

for auxiliary aids and services is first identified, and to

reassess communication effectiveness regularly throughout

the communication …. A public entity has *a <u>continuing</u>*

*<u>obligation to assess</u> the auxiliary aids and services it is*

*providing*, and should *<u>consult with individuals with disabilities</u>*

*<u>on a continuing basis</u> to assess what measures are required*

*to ensure effective communication*."  [emphasis added with

*italics* and *<u>underlining</u>*]  — see 75 FR 56225 [PDF p. 62 of 73]

https://www.govinfo.gov/content/pkg/FR-2010-09-15/pdf/20

10-21821.pdf


4.  This Court's error in denying the Plaintiff's initial request for the

appointment of a Special Master (ECF No. 39) anticipated that this

second motion could be submitted:  ["At this juncture, the Court does

not deem it necessary to appoint a special master. Plaintiff's motion to

appoint a special master is therefore denied without prejudice. Plaintiff

may renew his request at a later date should he feel that the Court is

not heeding his requests, or should other circumstances arise."] — see

75 FR 56164, 56225 (September 15, 2010), *supra*; and see attached #

(1) Motion Exhibit 1: Notice of Eviction – 14 Days, Marshal's Docket No.

15510 Residential, April 25, 2024

13

5. If his health permits and he agrees to accept, US District Judge Louis Stanton is suggested for appointment per FRCP Rule 53(b)(1); and the Plaintiff knows of no reason which would disqualify this senior judge per 28 USC §455.

6.  The Plaintiff's need for a Special Master is made urgent by "extreme hardship" which has been defined by the New York State (NYS) legislature in the Housing Stability and Tenant Protection Act of 2019 (HSTPA), also known as the Tenant Protection Act (TPA); and in part, this legislation amended Section 753 of  the NY Real Property Actions and Proceedings Law (RPAPL).

14 … the court, on application of the occupant, may stay the  issu-

15 ance of a warrant and also stay any execution to collect the

   costs of

16 the proceeding for a period of not more than [~~six months~~] <u>one

   year</u>, if

17 it appears that the premises are used for dwelling purposes; that the

18 application is made in good faith; that the applicant cannot within the

19 neighborhood secure suitable premises similar to those

   occupied by [~~him~~]

14

20  the applicant and that [he] the applicant

    made due and reasonable

21  efforts to secure such other premises, or that by reason of

    other facts

22  it would occasion extreme hardship to [him or his] the

    applicant or the


23  applicant's family if the stay were not granted. In determining

    whether

24  refusal to grant a stay would occasion extreme hardship, the

    court shall

25  consider serious ill health, significant exacerbation of an

    ongoing

26  condition, a child's enrollment in a local school, and any

    other exten-

27  uating life circumstances affecting the ability of the applicant

    or the

28  applicant's family to relocate and maintain quality of life. The

    court

29  shall consider any substantial hardship the stay may impose

    on the land-

30  lord in determining whether to grant the stay or in setting

<u>the length</u>

31 <u>or other terms of the stay</u> …."  [new words in the law are

<u>underscored</u> and deleted old law is shown with ~~strike out~~ enclosed

in brackets] -- see HSTPA or TPA amending RPAPL §753 at p. 53

of 74 https://legislation.nysenate.gov/pdf/bills/2019/S6458; and

see *Crowder v. Kitagawa*, 81 F.3d 1480, 1504 (9th Cir. 1996),

citing *Alexander v. Choate,* 469 U.S. 287, 302 (1985) ["In *Choate,*

the Court concluded that Congress intended to protect disabled

persons from discrimination arising out of both discriminatory

animus and 'thoughtlessness,' 'indifference,' or 'benign neglect' …

[and] whether disabled persons were denied 'meaningful access'

to state-provided services"]; and see *Crowder v. Kitagawa*, 842 F.

Supp. 1257 (D. Haw. 1994), citing *Plyler, supra*; and compare

*Cleburne v. Cleburne Living Center, Inc.,* 473 US 432, 440 (1985).

[rational relationship to a legitimate government interest]


7. Within the context defined by the US Department of Justice (DOJ) at

45 FR 37620, 37630 (June 3, 1980), some of the new words added to

RPAPL §753 are functional restatements of the RA; the ADA; the NYS

Executive Law (Exec L), Article 15, Human Rights Law (NY HRL), Exec L

§§290–301; NYC Local Law No. 49 (1977), Human Rights Law (NYC

HRL), NYC Administrative Code (NYC Code), Title 8, Civil Rights, NYC

Code §§8.101-8.703; the NYS Uniform Commercial Code (UCC),

Uniform Commercial Code (UCC), Article 2, Part 3: General Obligation

and Construction of Contract, UCC §§1.101–13.105; and the national

policy prohibiting unlawful discrimination solely on the basis of disability

> "In determining … extreme hardship, the court shall consider
>
> serious ill health, significant exacerbation of an ongoing condition,
>
> … and any other extenuating life circumstances affecting the
>
> ability [and di̲s̲ability] of [a person with disabilities]." — see RPAPL
>
> §753; compare 2 CFR §200.300(a) [Statutory and national policy
>
> requirements]; and see top of right column at 45 FR 37620,
>
> 37630 (June 3, 1980) re "Court Agencies" [PDF p. 25 of 59]
>
> https://archives.federalregister.gov/issue_slice/1980/6/3/37576-3
>
> 7634.pdf#page=25


8.  Within the context of emphasis by redundant repetition in 45 FR

37620, 37630 (June 3, 1980) and in RPAPL §753 (2019), the precatory

and/or hortatory statements of former Acting-Chief Administrative

Judge Tamiko Amaker concurrently function as an express warranty

statement about the fact of post-pandemic comorbidity factors affecting

litigants with disabilities, and this post-pandemic cohort includes the

Plaintiff

ACTING CHIEF ADMIN. JUDGE AMAKER:

8 … you know, we do our best

9 to keep everyone <u>up-to-date on ADA</u>

10 <u>accommodations, especially post-pandemic</u>.

11 It's something that I personally, you know,

12 have really instructed my judges that we have

13 to listen to individuals' requests for ADA

14 accommodations because if they have some

15 <u>preexisting condition</u> or some <u>comorbidity</u>

16 issue, then we certainly want to hear that

17 and make the necessary accommodation.

18 And in fact immediately post-pandemic

19 I was personally doing it for a court that I

20 was supervising because I wanted to make sure

21 that everyone who needed that accommodation

22 was given that accommodation. So that is

23 something I will certainly stress with our

24 judges." [emphasis added with *italics, <u>underlining</u>*] — "2-7-23

Joint Legislative Budget Hearing," Testimony of Tamiko Amaker,

Acting-Chief Administrative Judge, New York State Office of Court

Administration

https://nystateassembly.granicus.com/player/clip/7209?view_id=

8&redirect=true&h=db73bb94a29a57022a0242c264904d1e; and

see Transcript, p. 99, lines 8-24

https://nyassembly.gov/write/upload/publichearing/001340/transc

ript.pdf

https://nyassembly.gov/write/upload/publichearing/001340/transc

ript.pdf


9.  Within a context of emphasis by redundant repetition established by

45 FR 37620, 37630 (June 3, 1980) and RPAPL §753 (2019) and the

testimony of Judge Amaker (2023), the Plaintiff is seeking not less than

three in-chambers, burden-shifting opportunities to use spoken and

written words to communicate with the Special Master in ways that are

explained in NYC Local Law No. 59 (2018) ["cooperative dialogue"],

NYC Code §8-102, §8-107.28; and this burden-shifting, interactive

process of talking and writing is needed in order to

    (a) to assist this Court's decision-making about post-pandemic

    comorbidity factors affecting the Plaintiff's "program access" in

    this US District Court; and

    (b) to help the Plaintiff figure out a plan and/or template for

    explaining and suggesting how to mitigate the effects of

    communication barriers this Court can't or won't understand

19

because of irrebuttable presumptions. — see *McDonnell Douglas Corp v. Green*, 411 US 792 (1973) [burden shifting]; and see *Jacobsen v. NYC Health & Hosps. Corp.*, 22 N.Y.3d 824 (2014) [interactive process]; and see bottom of left column at 49 FR 35728 ["irrebuttable presumptions that absolutely exclude"]

10. The Plaintiff's request for a Special Master is needed, in part, because the facts and law in this case — complicated by the sequelae of neurological disabilities — compel the Plailntiff to marry FRCP Rule 8(e) with FRCP Rule 53(a)(1)(B)(i); and this specific amalgamation is anticipated in words codified at 42 USC §12134(b), citing 28 CFR part 41 and 28 CFR part 39 in chronological rather than non-numerical order in order to emphasize with redundant repetition that the will of Congress has been enacted to encourage nuanced analysis and to encourage affirmative and prophylactic actions; e.g.,

(i) <u>1978</u>. 45 CFR §85.53(b)(3) *ante* at subparagraph 3(a)(i)

(ii) <u>1980</u>. 28 CFR §41.53(b)(3) *ante* at subparagraph 3(d)(i)

(iii) <u>1984</u>. 28 CFR §39.130(b)(3):  "... may not, directly or through contractual or other arrangements, utilize criteria or methods of administration the purpose or effect of which would ... subject qualified handicapped persons to discrimination on the basis of handicap; or ... defeat or substantially impair

20

accomplishment of the objectives of a program or activity with respect to handicapped persons"]; and

(iv) <u>1984</u>. 49 FR 35724, 35728 (Sept. 11, 1984)

"Subparagraph (b)(3) prohibits the agency from utilizing criteria or methods of administration that deny handicapped persons access to the agency's programs or activities. The *phrase "criteria or methods of administration" refers to official written … policies and to the <u>actual practices</u>* …. This subparagraph prohibits both blatantly exclusionary policies or practices and nonessential policies and *practices that are neutral on their face, but deny handicapped persons an effective opportunity to participate*"] [emphasis added with *italics* and <u>underlining</u>] — see bottom of middle column at 49 FR 35728 [PDF p. 126 of 144]

https://www.govinfo.gov/content/pkg/FR-1984-09-11/pdf/FR-1984-09-11.pdf#page=126; and see 28 CFR §42.502(c)(1) ["*not obviated by or otherwise affected by the existence of any … requirement* that, *on the basis of disability, imposes … limits upon* the *eligibility of qualified individuals with disabilities to receive services*."] [emphasis added with *italics* and <u>*underlining*</u>]

11. The emphasis with redundant repetition in the prototype regulatory
template developed by HEW encompasses the structural redundancies
that are neither plain nor simple because discrimination defined as
unlawful is often neither plan nor simple; and the mirrored enforcement
schemes of 80+ federal agencies — including regulations of the US
Department of Health and Human Services (HHS), the US Department
of Housing and Urban Development (HUD), the US Department of
Justice (DOJ) and the Office of Management and Budget (OMB) — are
individually and collectively probative in this case.


12.  The underlying fabric of law in this case is awkward, unwieldy; and
it's a fact that the Plaintiff is clumsy with words; nevertheless, it is also
a fact that this is what is — an interwoven fabric of law which serial
Congresses and serial NY legislatures and serial NYC Councils have
woven together in prescient anticipation of precisely this kind of
"exceptional condition" per FRCP Rule 53(a)(1)(B)(i)


13.  The warp and weft of fact and law now acknowledged to be within
this Court's jurisdiction require this Court and the Special Master to
think about how the function of FRCP Rule 8(e) ["... construed so as to
do justice"] subordinates FRCP Rule 8(a) ["short plain statement"] and

FRCP Rule 8(d) ["simple, concise, and direct"] — see *ante* at

paragraphs 2 and 10; and see

49 FR 35724, 35728 (Sept. 11, 1984)

"Section 39.130 is an adaptation of the corresponding section of the section 504 coordination regulation for programs or activities receiving Federal financial assistance (28 CFR §41.51). This regulatory provision attracted relatively few public comments and has not been changed from the proposed rule.

"Paragraph (a) restates the nondiscrimination mandate of section 504. The remaining paragraphs in §39.130 establish the general principles for analyzing whether any particular action of the agency violates this mandate. These principles serve as the analytical foundation for the remaining sections of the regulation. If the agency violates a provision in any of the subsequent sections, it will also violate one of the general prohibitions found in §39.130. When there is no applicable subsequent provision, the general prohibitions stated in this section apply.

"Paragraph (b) prohibits overt denials of equal treatment of handicapped persons. The agency may not refuse to provide a handicapped person with an equal opportunity to participate in or benefit from its program simply because the person is handicapped. Such blatantly exclusionary practices often result

23

from the use of irrebuttable presumptions that absolutely exclude

certain classes of disabled persons (e.g epileptics,

hearing-impaired persons, persons with heart ailments) from

participation in programs-or activities without regard to an

individual's actual ability to participate." — see middle of right

column at 49 FR 35728 [PDF p. 126 of 144]

https://www.govinfo.gov/content/pkg/FR-1984-09-11/pdf/FR-198

4-09-11.pdf#page=126


14.  The underlying fabric of law in this case requires this Court to

parse a complicated pattern of words woven together over the course

of five decades; moreover, the peculiar difficulties of this case were

anticipated in 1980 by President Jimmy Carter:

"...[T]he action I am taking today will make it *easier for those*

*jurisdictions which wish to comply with Federal nondiscrimination*

*statutes and much harder for those who seek to violate those*

*provisions*. It is an outgrowth of my determination to prevent

*Federal dollars from being used to perpetuate patterns of conduct*

*which inhibit the full enjoyment of Federal financial assistance by*

*all groups* [not excluding the Plaintiff] within our society.

[emphasis added with *italics* and *underlining*] — see US Exec.

Order 12250 (EO 12250), ''Leadership and Coordination of

Nondiscrimination Laws,'' 45 FR 72995 (Nov. 4, 1980); and see EO

12250 Signing Statement of President Carter,  November 2, 1980;

and see *Henrietta D. v. Bloomberg*, 331 F.3d 261, 278 (2d Cir.

2003), citing Charles Alan Wright & Arthur R. Miller, *5 Federal*

*Practice & Procedure* §1271 (2002) [FRCP re "burden of proof …

when the evidence needed is not typically within the party's

control"]; and see 28 CFR §35.164 [burden of proof in writing];

and see NYS UCC §2-313 [express warranty]


15. This motion is about the functional denial of meaningful program

access — emphasizing the Plaintiff's continuing needs for "usability" in

this US District Court; and this application for the appointment of a

Special Master is functionally different from the purposes of the

Plaintiff's words in his prolix Supplemental Complaint [ECF Nos. 34-35].

— see top of right column at 45 FR 37629 re "usability" [PDF 24 of 59]

https://archives.federalregister.gov/issue_slice/1980/6/3/37576-3

7634.pdf#page=24


14.  The Plaintiff's need for the Special Master is made urgent by the

misconduct of the scofflaw Defendants in violation of FRCP Rule 60(3);

however, in the "cooperative dialogue" with the Special Master, the

Plaintiff anticipates that this rule will be background only. — see 28 CFR

§35.160(b)(2) [the accommodations and/or modifications "necessary to ensure *effective communication will vary* in accordance with the <u>method of communication used</u> *by the individual; the <u>nature, length, and complexity of the communication</u> involved; and the <u>context in which the communication is taking place</u>.*"] [emphasis added with *italics* and *<u>underlining</u>*].

15. The Plaintiff seeks to work together with the Special Master in a process of putting short and plain words together to define a working model of a kind of burden-shifting analysis template for the Plaintiff and this Court to use as needed in needed interactive processes going forward; and this difficult work would seem likely to require

(a) parsing the consequences of the chronology of actions and inaction in 2022 through 2024 which today combine to affect Plaintiff's abilities and disabilities in the contexts of "extreme hardship" as defined at RPAPL §753 (2019), including

(i) "serious ill health"; and

(ii) "exacerbation of ongoing conditions"; and

(iii) "extenuating life circumstances" affecting the Plaintiff's abilities and disabilities; and

26

(b) parsing projected consequences of future requests for

interactive processes for determining meaningful modifications of

procedures.


Dated: April 28, 2023                  Respectfully submitted,
      New York, New York
                             /s/ Ronald Davidson

                             Ronald Davidson
                             531 Main Street, Apt. 217
                             New York, New York 10044
                             646-973-7929
                             ron.center2019@gmail.com

27

**EXHIBITS**

NOTE: There is one exhibit identified in the paragraphs of this Motion.

\# (1) Motion Exhibit 1
Notice of Eviction – 14 Days, Marshal's Docket No. 15510 Residential,
April 25, 2024

**TABLE OF CITATIONS**

**CASES**
*Alexander v. Choate,*
    469 U.S. 287 (1985) …………………………………..…… 15
*Cleburne v. Cleburne Living Center, Inc.,*
    473 US 432 (1985) …………………………………..………… 16
*Crowder v. Kitagawa*,
    81 F.3d 1480 (9th Cir. 1996) …..………………………… 15
*Crowder v. Kitagawa*,
    842 F. Supp. 1257 (D. Haw. 1994) ……………………… 16
*Henrietta D. v. Bloomberg*,
    331 F.3d 261 (2d Cir. 2003) …..……………………… 24
*Jacobsen v. NYC Health & Hosps. Corp.*,
    22 N.Y.3d 824 (2014) …………………………………… 19
*McDonnell Douglas Corp v. Green*,
    411 US 792 (1973) ……..……………………………… 19
*Plyler v. Doe,*
    47 US 702, 216 (1982) …………………………………  1

**US CONSTITUTION**
Article VI, Paragraph 2 …………………………………..…………  2
1st Amendment …………………………………..……………  2
14th Amendment [due process] ……………..…………………   2
14th Amendment [equal protection] ………………………………  2

**US LAWS**

Age Discrimination Act of 1975,
    Pub. L 94-135, 89 Stat. 728 …………………………………… 3
Americans with Disabilities Act of 1990 (ADA),
    Pub. L. 101-336, 104 Stat. 327 ……………………………… 4
ADA Amendments Act of 2008 (ADAAA),
    Pub L. 110-325, 122 Stat. 355 ………………………………… 4
Civil Rights Restoration Act of 1987 (CRRA),
    Pub. L. 100-259, 102 Stat. 28 ………………………………… 3
Health Insurance Portability and Accountability
    Act of 1995 (HIPAA), Pub. L. 104–191,
    100 Stat 1936 ……………………………………………………… 4
Patient Protection and Affordable Care Act
    of 2010 (ACA), Pub. L. 111-148,
    124 Stat. 109–1025 ………………………………………………… 5
Rehabilitation Act of 1973 (RA or Sec. 504),
    Pub. L. 93-112, 87 Stat. 355 …………..…………………………… 3
Rehabilitation Act Amendments of 1978,
    Pub. L. 95-602, 92 Stat. 2995 ………………………………… 3
Rehabilitation Act Amendments of 1986,
    Pub. L. 99-506, 100 Stat. 1807 ……………………………… 3

**US STATUTES**

28 USC §455 …………………………………………………………… 13
42 USC §12134(b) …………………………………………………… 20

**US FEDERAL REGISTER**

43 FR 2132 (January 13, 1978) re 45 CFR part 85,
    Implementation of Executive Order 11914,
    Nondiscrimination on the Basis of Handicap in
    Federally Assisted Programs, Coordination of
    Federal Agency Enforcement of Section 504 of
    the Rehabilitation Act of 1973 ………………………………… 4

45 FR 37622 (June 3, 1980) re 28 CFR part 42,
    Nondiscrimination Based on Handicap in
    Federally Assisted Programs; Implementation
    of Section 504 of the Rehabilitation Act of 1973
    and Executive Order 11914, Final Rule ................................  6
45 FR 72995 (November 4, 1980),
    US Exec. Order 12250 (EO 12250), Leadership
    and Co-ordination of Nondiscrimination Laws .....................  7
46 FR 40686 (August 11, 1981) re 28 CFR part 41 and
    45 CFR part 85, Redesignation and Transfer of
    Section 504 Guidelines  ...........................................................  7
49 FR 35724 (Sept. 11, 1984) re 28 CFR part 39,
    Final Rule, Section-by-Section Analysis and
    Response To Comments ..........................................................  8
56 FR 35694 (July 26, 1991),
    Nondiscrimination on the Basis of Disability in
    State and Local Government Services  ..........................  8
75 FR 56164 (September 15, 2010),
    Nondiscrimination on the Basis of Disability in
    State and Local Government Services  ...................................  2

## US REGULATIONS

### OMB

2 CFR §200.300(a) ................................................................  17

### DOJ

28 CFR part 35 .....……...........................................................  2
28 CFR §35.130(a) ...............................................................  12
28 CFR §35.160 .....................................................................  2
28 CFR §35.160(b)(2) ..........…..............................................  9
28 CFR §35.164 .....................................................................  9
28 CFR part 35, app. A (2009) ............................................  10

### DOJ

28 CFR part 39 .....……...........................................................  8
28 CFR §39.130(b)(3) ......................................................  12

### DOJ

28 CFR part 41 ................................................ 7
28 CFR §41.51(b)(3) ..................................... 7
28 CFR §41.53 .............................................. 8
28 CFR §41.56 .............................................. 8

### DOJ

28 CFR part 42 ............................................. 6
28 CFR §42.502(c)(1) ................................... 21

### HEW

45 CFR part 85 ............................................. 4
45 CFR §85.51(b)(3) ..................................... 5
45 CFR §85.53 .............................................. 5
45 CFR §85.56 .............................................. 6

## US RULES

Federal Rules of Civil Procedure (FRCP)
     FRCP Rule 8(a) ................................... 19
FRCP Rule 8(d) ........................................... 21
FRCP Rule 8(e) ........................................... 21
FRCP Rule 53(a)(1)(B)(i) ............................ 1
FRCP Rule 60(3) ......................................... 25

## NYS LAWS

Housing Stability and Tenant Protection Act
    of 2019 (HSTPA), aka Tenant Protection
    Act (TPA) .......................................... 14
Executive Law (Exec L), Article 15,
    Human Rights Law (NY HRL) .................. 16
Real Property Actions and Proceedings
    Law (RPAPL), Articles 1-21 .................. 3
Uniform Commercial Code ......................... 16

## NYS RULES & REGULATIONS

NY Exec L §§290–301............................... 16
NY RPAPL §753 ......................................... 3
NY UCC §§1.101–13.105 ............................ 16
NY UCC §2-313 ......................................... 24

**NYC LAWS**
NYC Local Law No. 49 (1977), Human Rights
    Law (NYC HRL) ................................................................ 16
NYC Local Law No. 59 (2018), HRL ...................................................... 19

**NYC ADMINISTRATIVE CODE**
NYC Administrative Code (NYC Code), Title 8,
    Civil Rights, NYC Code §§8.101-8.703 ........................................ 16
NYC Code §8-102 [cooperative dialogue] ......................................... 19
NYC Code §8-107.28 [cooperative dialogue] ...................................... 19

**MISCELLANEOUS AUTHORITIES**
NY Assembly, 2-7-23 Joint Legislative Budget Hearing,
    Testimony of Tamiko Amaker, Acting-Chief
    Administrative Judge, New York State Office of
    Court Administration .............................................................. 18
US Department of Justice (DOJ), *The Americans
    with Disabilities Act Title II Technical
    Assistance Manual Covering State and
    Local Government Programs and
    Services* (ADA TAM-II), section II–7.1000 .............................. 10
US Executive Order 12250 (EO 12250) of
    Nov. 4, 1980,  ''Leadership and Coordination
    of Nondiscrimination Laws,''
    45 FR 72995 (Nov. 4, 1980) .................................................. 7
US Exec. Order 12250 (EO 12250) Signing
    Statement of President Carter,
    November 2, 1980 ................................................................ 24

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
TRIBUNAL CIVIL DE LA CIUDAD DE NEW YORK
CONDADO DE NEW YORK

Index No.L/T   72772/19

Marshal's Docket No. 15510 RESIDENTIAL

PATRICK D. KEHOE AS SUCCESSOR
EXECUTOR OF THE ESTATE OF *Ursula Bequrecgman Deceas*
                                          *against*

|                  | Petitioner Landlord |
|                  | Respondent Tenant |
|                  | Respondent Undertenant |

RONALD DAVIDSON
531 MAIN STREET
Apt# 217
NEW YORK NY 10044



CITY MARSHAL
**DAVID SMITH #30**
1 Cross Island Plaza
Rosedale, NY 11422
Tel: (718) 978-8070

## NOTICE OF EVICTION – 14 DAYS

To the above named tenant(s) and undertenant(s):

The Court has issued a warrant of eviction. If you do not vacate the location listed above within FOURTEEN DAYS after the date of this notice, YOU MAY BE EVICTED, WITHOUT FURTHER NOTICE ON **THE FOLLOWING BUSINESS DAY** or on any business day after. "Business Days" are Monday through Friday except legal holidays.

### HOW CAN I STOP THIS EVICTION?

• The ONLY way you can stop this eviction is with a Court order prior to eviction that (1) temporarily stays your eviction, or (2) vacates a warrant for the non-payment of rent, after a deposit or payment with the Court of the full rent due.

• You may apply for such an order at the Civil Court, Landlord-Tenant part, in your borough. Contact information for the Courts is available at the link below.

• If granted, a temporary stay will stop this eviction until the stay expires or is vacated by the Court.

### HOW CAN I BE EVICTED?

• If you do nothing in response to this notice, you may be evicted without further notice.

• If a Court has already ordered that you be evicted if you fail to make a payment or comply with the Court's order by a certain date, your failure to pay or comply with the Court's order by that date may result in your eviction without further notice.

### HOW CAN I GET HELP?

• New York City provides free legal services for tenants facing eviction. Call 718-557-1379 for information about how to access free legal assistance. Free interpretation services are available.

• If you are dependent upon a person in the military service of the United States, let the clerk of the Court know immediately in order to protect your rights. Contact information for the Clerk is available at the link below.

• The Department of Social Services may be able to help you with back payments or other assistance. Call 718-557-1399 or 311 for information. Free interpretation services are available.

## NOTIFICACIÓN DE DESALOJO DE 14 DÍAS

A los inquilinos y subinquilinos citados arriba:

El tribunal ha emitido una orden de desalojo por la cual, de no desocupar el lugar indicado arriba dentro de CATORCE DÍAS después de la fecha de la presente notificación, PODRÍAN DESALOJARLO SIN PREVIO AVISO A PARTIR DEL DÍA HÁBIL SIGUIENTE, a contar de lunes a viernes excepto los días festivos oficiales.

### ¿CÓMO DETENGO EL DESALOJO?

• La ÚNICA forma es con un dictamen que emita el tribunal antes del desalojo (1) que lo suspenda temporalmente o (2) que desestime una orden judicial por impago o después de realizar depósito o saldar el alquiler ante el tribunal.

• Podrá solicitar dicho dictamen en la Sala de Asuntos entre Propietario e Inquilino del tribunal civil de su municipio. Vea los datos de contacto de los tribunales en el enlace al pie de página.

• De ser concedido dicho dictamen, una suspensión temporera detendrá el desalojo hasta que venza o bien lo desestime el tribunal.

### ¿CÓMO PODRÍAN DESALOJARME?

• De hacer caso omiso a esta notificación, podrían desalojarlo sin previo aviso.

• Si el tribunal ya dictaminó que lo desalojen por impago o incumplimiento de dicha orden en fecha determinada, podrían desalojarlo sin previo aviso.

### ¿DÓNDE CONSIGO AYUDA?

• La ciudad ofrece servicios legales gratis a inquilinos con amenaza de desalojo. Llame al 718-557-1379 y averigüe cómo conseguirla. Se dispone de interpretación gratis.

• Si depende de alguien en el servicio militar de los Estados Unidos, proteja sus derechos al informárselo enseguida al secretario del tribunal, cuyos datos de contacto aparecen en el enlace al pie de página.

• El Departamento de Servicios Sociales (Department of Social Services) podría ayudarle con los pagos atrasados y demás asuntos. Infórmese por el 718-557-1399 o el 311. Se dispone de interpretación gratis.

Date of Notice/Fechada el †    Thursday, April 25, 2024

Earliest Eviction Date/
Fecha del primer desalojo/    **05/10/24**

**More Information / Más información en**
nyc.gov/doi/evictions **(212) 709-7900**

驱逐通知 – 更多信息
**Уведомление о выселении: дополнительная информация**
উচ্ছেদ সমন – আরও তথ্যের জন্য
إشعار إخلاء – مزيد من المعلومات

驅逐通知 – 更多資訊
**Avi Konsènan Degèpisman: plis enfòmasyon**
퇴거 통지 – 자세한 정보
**Avis d'expulsion: plus d'informations**
Powiadomienie o eksmisji: dodatkowe informacje

† The date of this notice shall be on or after the date the notice is served on respondent.    †La presente notificación esta fechada a partir del día de entrega al demandado.