**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE
DATED: 5-10-2024

The Court will address this motion and the motion at ECF No. 79 at the conference on May 21, 2024.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—————————————————————x

RONALD DAVIDSON, Plaintiff,

　　-- against --

OFFICE OF COURT ADMINISTRATION;
HON. JOSEPH ZAYAS; HON. LAWRENCE
HON. LAWRENCE MARKS;
JOHN DOE1; JOHN DOE2; JOHN DOE3;
JOHN SULLIVAN; ALIA RAZZAQ;

TRACEY FERDINAND;
NORMA JENNING[S];
TRAVIS ARRINDE[LL];
VANESSA FANG;
FRANCES ORTIZ;

HON. THOMAS D[...];
KIMBERLY HILL;
HON. DAWN PIN[...];

PATRICK KEHOE,

—————————————————————

1:22-cv-08936
　　　　-PGG-VF

MOTION RE [ACCOM]MODATION [NEU]ROLOGICAL [DISABIL]ITIES AND [NECESS]ARY [PROPHYL]ACTIC [INTERA]CTIVE [PROCES]SES

**MEMO ENDORSED**

HON. VALERIE FIGUEREDO
UNITED STATES MAGISTRATE JUDGE
DATED:

PRELIMINARY STATEMENT

1. This motion is a request for a prophylactic interactive process for determining appropriate reasonable accommodations and

modifications of procedure for a litigant with disabilities caused by a Traumatic Brain Injury (TBI) in 1979.

2. The disabling sequelae of TBI were affected in significant ways by a viral infection which was most severe between October 2019 and March 2021; and in 2024, post-pandemic changes in the Plaintiff/Appellant's neurological disabilities and other virus-caused comorbidity factors have not yet stabilized.

## LITIGANT WITH DISABILITIES

3. The Plaintiff/Appellant is a 74 year-old man with handicaps as defined by Section 504 of the Rehabilitation Act of 1973 (RA/Sec. 504), 29 USC §794, et seq.

4. The Plaintiff/Appellant is a "qualified" person with handicaps per mirrored and complementary federal agency regulations implementing the RA, e.g.

    (i) 24 CFR part 8 (§§8.1–8.58); and
    (ii) 28 CFR part 41 (§§41.1–41.58); and

 (iii) 28 CFR part 42 (§§42.1-42.799); and

 (iv) 45 CFR part 84 (§§84.1–84.61); and

 (v) 45 CFR part 92 (§§92.1–92.105)

5. The Plaintiff/Appellant is a person with disabilities as defined by the Americans with Disabilities Act of 1990 (ADA) in Title II (42 USC §§12131–12165) and in Title III (42 USC §§12181–12189); and regulations implementing the ADA's Titles II and III incorporate Title IV (42 USC §§12201–12213), as amended

6. The Plaintiff/Appellant is a "qualified" person with disabilities per mirrored and complementary federal agency regulations implementing the ADA, e.g.,

 (i) at 28 CFR Part 35 (28 CFR §§35.101–35.999); and

 (ii) at 28 CFR part 36 (§§36.101–36.607); and

 (iii) 28 CFR part 39 (§§39.101–39.701) per 42 USC §12134(b); and

 (iv) 45 CFR part 92 (§§92.1–92.105)

7.  The Plaintiff/Appellant is a person with disabilities as defined by New York State (NYS or NY) Executive Law (Exec L), Article 15, Human Rights Law (NY HRL), NY Exec L §§290–301.

8.  The Plaintiff/Appellant is a "person" with a "disability" and a "person aggrieved" as defined by New York City (NYC) Human Rights Law (NYC HRL), NYC Administrative Code (NYC Code) §8-102; and this Circuit has acknowledged NYC Council's enacted intent to ensure that the NYC HRL will be construed as a floor for anti-discrimination protections, rather than a ceiling. — see NYC Local Law No. 85 of 2005 (Civil Rights Restoration Act of 2005).

9. The Plaintiff/Appellant is a member of a protected class of New Yorkers with disabilities as defined by NYC HRL at NYC Code §8-101 and at NYC Code §8-102 and at NYC Code §8-107(15)-(17).

## NEUROLOGICAL DISABILITIES

10. The Plaintiff/Appellant is a litigant with a physiological disorder affecting his cognition and communication; and this is acknowledged with specificity in federal regulations, e.g.

> (a) in DOJ regulations implementing the RA at 28 CFR §42.540(k)(1)-(2) [Physical or mental impairment means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological]
>
> (b) in DOJ regulations implementing the ADA at 28 CFR §35.108 [Physical or mental impairment means any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as: neurological ...]

11. This motion and and all the words drafted by the Plaintiff/Appellant for docketing in the district court are manifest evidence of hard work and a good faith effort to try to understand federal, state and municipal laws which were enacted and

amended across a span of decades in order to avert the tragedy which now makes this appeal necessary.

12. This motion is manifest evidence of this Circuit's failure to act prophylactically in ways which could have averted the context of factors which now compel this appeal.

## INTERACTIVE PROCESS

13. In part, the need for this *ante hoc* request for interactive processes was anticipated by DOJ lawyers who drafted regulations implementing the RA and the ADA, e.g.,

> (a) in DOJ regulations implementing the RA at 28 CFR §42.503(b)(3) ["recipient may not ... utilize criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, defeat or substantially impair accomplishment of the objectives of the recipient's program or activity"]; and
>
> (b) in DOJ regulations implementing the ADA at 28 CFR §35.130(3)(i)-(ii) ["public entity may not ... utilize criteria or

> methods of administration ... that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program"].

14. The concept of an "interactive process" is the subject of clear precedents in the federal and state common law affecting persons with disabilities, e.g., *McDonnell Douglas Corp v. Green*, 411 US 792 (1973) [burden shifting]; and see *Jacobsen v. NYC Health & Hosps. Corp.*, 22 N.Y.3d 824 (2014) [interactive process]

15. The term "interactive process" is congruent with the words "cooperative dialogue" which were codified in the NYC HRL in 2018. — see NYC Admin. Code §8-102 ["cooperative dialogue" = "the process by which a covered entity and a person who is entitled to, or may be entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties

that such potential accommodations may pose for the covered entity"]

16. The words "interactive process" have a straightforward meaning which has been explained by the the US Equal Employment Opportunity Commission (EEOC):

> Interactive Process:
>
> The interactive process refers to an information-gathering approach used ... to evaluate a request for accommodation. It is intended to be a flexible approach that centers on ... communication ... to collect whatever information is necessary to make an informed decision about whether the requestor is covered as an individual with a disability and, if so, *what reasonable <u>accommodation(s) will effectively eliminate the barrier</u> identified by the requestor* and permit an equal opportunity"] — see US Equal Employment Opportunity Commission (EEOC) Directives Transmittal No. 560.003, "Procedures for Providing Reasonable Accommodation for Individuals with Disabilities," November

1, 2018, p 2 [PDF p. 3 of 30]

https://www.eeoc.gov/sites/default/files/migrated_files/eeoc/internal_eeo/EEOC-2018-Procedures-for-Providing-Reasonable-Accommodations-for-Individuals-with-Disabilities.pdf

17. In effect, this appeal is about the ways in which the hope for "effective communication" is undermined by "irrebuttable presumptions" which have unintended consequences, including the marginalization of a litigant with not-easy-to-parse disabilities. — see 42 USC §12134(b), citing 28 CFR part 39; and see bottom of left column at 49 FR 35726 (Sept. 11, 1984) [PDF p. 126 of 144] ["irrebuttable presumptions that absolutely exclude"]

https://www.govinfo.gov/content/pkg/FR-1984-09-11/pdf/FR-1984-09-11.pdf#page=126

## EFFECTIVE COMMUNICATION

14. Although the federal judiciary was purposefully excluded from the enforcement scope of the RA and ADA, the function of federal

judges is not uninformed by the federal government's statutory and national anti-discrimination policies. — see Office of Management and Budget (OMB) regulation at 2 CFR §200.300(a) ["... in full accordance with the U.S. Constitution, Federal Law, and public policy requirements … [such as] those protecting free speech... and prohibiting discrimination].

15. The words of DOJ lawyers who drafted 28 CFR §35.160(b)(2) are useful as a template guide to help a litigant with disabilities and federal judges work together to find a way of figuring out the "how" and "why" of accommodations and/or modifications necessary to ensure effective communication; and the kind of accommodations and/or modifications will be vary over time because of the interplay of several predictable factors, e.g.,

> 28 CFR § 35.160(b)(2)
>
> The type of auxiliary aid or service necessary to ensure *effective communication will vary in accordance with the <u>method of communication</u> used by the individual; the <u>nature, length, and complexity of the communication</u>*

*involved; and the <u>context in which the communication</u> is taking place*. In determining what types of auxiliary aids and services are necessary, a public entity shall give *primary consideration to the requests of individuals with disabilities*. [emphasis added with *italics* and <u>underlining</u>]

Dated: May 6, 2023       Respectfully submitted,
       New York, New York

                                 /s/ Ronald Davidson

                                   Ronald Davidson
                                   531 Main Street, Apt. 217
                                   New York, New York 10044
                                   646-973-7929
                                   ron.center2019@gmail.com