UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
—--------------------------------------x
RONALD DAVIDSON, Plaintiff,

   -- against --

OFFICE OF COURT ADMINISTRATION;
JOSEPH ZAYAS;                 1:22-cv-08936
LAWRENCE MARKS;              -PGG-VF
JOHN DOE1;
JOHN DOE2;
JOHN DOE3;                MOTION PER
JOHN SULLIVAN;             FRCP RULE 54(b)(1)(B)
ALIA RAZZAQ;              RE ECF NO. 148
TRACEY FERDINAND;
NORMA JENNINGS;
TRAVIS ARRINDEL;
VANESSA FANG;
FRANCES ORTIZ;

THOMAS DINAPOLI;
KIMBERLY HILL;
DAWN PINNOCK;

PATRICK KEHOE, Defendants

—--------------------------------------x

1. This Motion per Federal Rules of Civil Procedure (FRCP) Rule 54(b)(1)(B) is
necessary because the Court's decision at ECF No. 148 denies without reading or
considering the substance of sentences in ECF No. 146; and these meaningful words
were submitted despite great obstacles causing disparate impacts which affected a
litigant with disabilities; and this reconsideration is necessary

     (a) to correct a meaningful error of procedure; and

(b) to prevent manifest injustice caused by the

(i) the self-defined deliberate indifference of the Judicial Conference of the United States (JCUS), and

(ii) the deliberate indifference of the Judicial Council of the Second Circuit (Judicial Council) defined by JCUS in 1995, and

(iii) the cruel but-not-unusual, perversely ordinary, conventional, long-standing, well-settled and too-often-successful patterns and practices of systemic unlawful discrimination based on disability which have been affirmatively orchestrated by the sofflaw Defendants and by other non-party, non-federal scofflaw recipients of federal financial assistance in NY and NYC; and

(iv) the deliberate indifference of US Magistrate Judge Valerie Figueredo, whose decision-making has been misinformed by the unconstitutional, administratively-contrived culture of systemic discrimination based on disability in the US District Courts of the Second Circuit in the Roosevelt, Moynihan and Marshall courthouses; and

(v) the unacknowledged baseline prejudices based on "irrebuttable presumptions that absolutely exclude" which were not mitigated for US District Judge Paul Guardephe and Judge Figueredo by JCUS and the Judicial Council. – see left column at  49 FR 35724, 35728 (September 11, 1984);  and see (#11) Exhibit 11


2. The Plaintiff is a 75-year-old man with multiple disabilities, as confirmed/defined by 42 USC §423(d) and the US Social Security Administration (SSA).

3. The Plaintiff is an unlawfully targeted/victimized member of the "protected class;" and this was acknowledged in contractual covenants prohibiting discrimination based on disability as a condition of federal financial assistance by the State of New York (NY) and the City of New York (NYC); and this funding stream was made possible by the United States Housing Act of 1937, Pub L 75-896, 50 Stat 888, as amended by

> (a) Section 109 of the Community Development Act of 1974, (HCDA) Pub. L. 93-383, 88 Stat. 633.; and

> (b) Section 507 of the Quality Housing and Work Responsibility Act of 1998 (QHWRA), Pub L 105-276, 112 Stat 2461, 2524-2525 — see property records for New York County at Block 1373, Lot 40 and at Block 1373, Lot 50 (Reel 419/1795) re Ground Lease anti-discrimination covenant at p. 42 (Reel 419/1836)


4. The prejudicial accretion of off-the-record presumptions which underlie ECF No. 148 are compelling evidence of decision-making which has been predicated on an amalgamation of negligence and deliberate indifference by the JCUS and the Judicial Council. — see *Adickes v. S. H. Kress Co.*, 398 US 144, 168 (1970) ["practices . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law"]


5. The Court's presumptions, patronizing attitudes, fears, and stereotypes about individuals with disabilities in the context of hollow published words and express warranties of JCUS — and  the predictable consequences of JCUS's failures of meaningful follow-up — define a proximate cause of the cumulative prejudicial errors

which inform ECF No. 148. — see 56 FR 35594, 35703 (July 26, 1991) re 28 CFR

§35.130 ["... to prohibit exclusion and segregation of individuals with disabilities and

*the denial of equal opportunities* enjoyed by others, based on, among other things,

*presumptions*, *patronizing attitudes*, fears, and *stereotypes* about individuals with

disabilities. Consistent with these standards, <u>public entities are required to ensure that</u>

<u>their actions are based on facts</u> *applicable to individuals and* **not on presumptions**"]

[emphasis added with *italics*, <u>underlining</u> and **bold**], contextualized by 28 CFR

§35.108(d)(2)(iii)(K) [predictable assessments]


6. JCUS is ultimately responsible for the harms and irreparable injuries caused by its

perverse failures to ensure a public policy baseline consistent with Article III functions

which were self-defined in 1995 for the federal judiciary nationwide, <u>not</u> excluding the

Eastern District of New York (EDNY) and SDNY and the US Court of Appeals for the

Second Circuit. — see JCUS, *Guide to Judiciary Policy*, Vol. 5 §255.40 [Local

Procedures]; and see ADA legislative history archived in the Federal Depository

microfiche set, SUDOC No. Y1.L11/4.S.HRG. 101-159, re Sen. Kennedy's analysis

["**the combination of different ... laws  ... i**n *order to achieve a public policy*

*outcome* …. I think we are entitled to have learned from past experience.  I think

that is part of the legislative process.  *We have learned what has been effective*."]

[emphasis added with *italics* and **bold**]


7. JCUS is ultimately responsible for enabling the heedless actions and inaction of the

Judicial Council in an unclear process which effectively nullified the national and

statutory anti-discrimination policy promulgated by the US Office of Management and

Budget (OMB) at 2 CFR part 200, subpart D (§§200.300–200.346) [Post Federal Award Requirements]; and in this way, the scofflaw Defendants and other non-party, non-federal scofflaw recipients of federal financial assistance were unlawfully enabled, aided and perversely encouraged in their systemic non-compliance with multiple, redundantly repeated anti-discrimination covenants in contracts executed across a span of many decades; and in this way, the Plaintiff and other "protected class" members have been compelled to suffer serial harms and irreparable injuries without meaningful opportunity for judicial review and relief. — see JCUS, *Guide to Judiciary Policy*, Vol. 5 §255.40 [Local Procedures]

8. The Judicial Council's perverse words, actions and inaction define a proximate cause of specific and cumulative errors affecting court users with communications disabilities in the Roosevelt, Moynihan and Marshall courthouses; and this includes includes the errors and consequences of ECF No. 148 in this action; and this is because of an amalgamation of negligence and deliberate indifference made manifest in the critical failure to provide the essential JCUS-defined administrative structure which has been proven to be necessary for 40+ years for persons with disabilities nationwide, not excluding the Plaintiff in this action. — see JCUS, *Guide to Judiciary Policy*, Vol. 5 §255.40 [Local Procedures]; and compare *Loeffler v. Staten Island Univ. Hosp*, 582 F3d 268, 275 (2nd Cir. 2009) ["intentional discrimination against the disabled … may be inferred when a 'policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the [challenged] policy . . . [or] custom'], citing *Bartlett v. New York State Bd., Law Examiners*, 156 F.3d 321, 331 (2d Cir. 1998)

["intentional discrimination against the disabled does not require personal animosity or ill will"]

9. The predictable likelihood of this Court's errors in 2025 was made explicit in June 2023 by the incongruous words and actions of Judge Figueredo in a status conference:

THE COURT:  "... the reason I held this conference … is because, Mr. Davidson, you had filed last fall, in October, a motion titled 'Request for Interactive Process.'

"And I'll be perfectly candid.  I'm not entirely sure what you're seeking, and so I figured I'd ask because ***I haven't seen this before, and I wasn't sure exactly what you wanted me to do***." [emphasis added with *italics* and **bold**] — see (#1) Exhibit 1: June 5, 2023 Transcript in *Davidson v  OCA* at p. 2, lines 11-23; and compare JCUS, *Guide to Judiciary Policy*, Vol. 5 §255 [Services to the Impaired and Others with Communication Disabilities] at pp. 7–8 [PDF pp. 11–12 of 39] https://www.uscourts.gov/sites/default/files/guide_vol05.pdf; and see re-statement of national disability discrimination policy at 42 USC §12134(b), amplified at 28 CFR §39.130 at 49 FR 35724, 35728 (Sept. 11, 1984)  ["The phrase "criteria or methods of administration" refers to official written … policies and to *the actual practices* …. This subparagraph prohibits both blatantly exclusionary policies or practices and nonessential policies and practices that are *neutral on their face, but deny handicapped persons an effective opportunity to participate*"] [emphasis added with *italics* and *underlining*]; and compare (#28) Exhibit 28: paragraph 25 in the Stipulation of

Settlement (ECF No. 55) in *Butler v. City of New York*, 1:15-cv-03783-RWS-JLC

(SDNY July 17, 2017)

https://www.nyc.gov/assets/dhs/downloads/pdf/butler-settlement-agreement.p

df

> 25. <u>RA Process</u>. *The DHS RA **process will be interactive**, and DHS will*
>
> *consider RA requests on an individualized basis*. *A DHS Client will not be*
>
> *required to specify any particular words or language to request an RA* …
>
> [and] *DHS will give primary consideration to the individual's preference* ….
>
> [emphasis with <u>underlining</u> in original; emphasis added with *italics* and
>
> **bold**]


10. This Motion is necessary because of the accretion of on-going successes of the

scofflaw Defendant's purposeful violation of 42 USC §1986 and 42 USC §1985 and 42

USC §18116 with targeted words, actions and inaction which succeeded in

weaponizing the Plaintiff's disability and enabling fraud at the same time. — see (#2)

Exhibit 2: ECF No. 52 in *Davidson v OCA*; and see (#29) Exhibit 29: June 5, 2023

Transcript in *Kehoe v. Davidson*, L&T Index No. 072772-NY-19


11. This Motion is necessary because of the merged set of criminal and civil frauds in

which the scofflaw Defendants have contrived to make themselves a proximate cause

of harms and irreparable injuries to the Plaintiff. — see online consequences of (#2)

Exhibit 2, *supra*, in the context established by (#3) Exhibit 3: paragraph 29,

construed in the context established by paragraphs 25-29 and 34-35, in the

Settlement Agreement (ECF No. 67) in *Butler, supra* (SDNY November 13, 2017)

25. <u>RA Process</u>. The DHS RA process will be **_interactive_**, and _DHS will consider RA requests_ **_on an individualized basis_**. A DHS Client will _not be required to specify any particular words or language to request an RA_ or to have an RA granted. If more than one accommodation is available to meet the need of the individual making the request, DHS will give **_primary consideration to the individual's preference_**, though DHS has the ultimate discretion to select and offer an accommodation that is appropriate and effective for both the Class Member and DHS. [emphasis with <u>underlining</u> in original; emphasis added with _italics_ and **bold**]

26. DHS staff will not make any adverse determination regarding shelter benefits in cases in which the Shelter Applicant or DHS client's actual or perceived failure to comply relates to a disability requiring an accommodation that has not been provided. In the event that an accommodation has been previously provided, the client may request and the Agency shall consider the need for an additional or alternative accommodation prior to making an adverse determination.

27. <u>Time for Response</u>. _DHS will respond to all requests for an RA by a Class Member as promptly as possible and within a reasonable and appropriate time frame_. The reasonable and appropriate time frame for a disposition concerning any particular request will take into account all relevant factors, including the nature of the Class Member's disability and _the effect of failing to immediately provide the RA on the Class Member's ability to meaningfully access and benefit from relevant shelter services_. Such time frames will also take into account that a ·Class Member may need to seek information from outside sources, their

ability to do so (including the fact that they may need time to address basic needs during the application process), and whether they may need assistance with the process. Where an RA request relates to urgent matters that impact a Class Member's ability to meaningfully access shelter and shelter services, ***the time taken by DHS to respond shall not be so long as to by itself rise to the level of a denial of meaningful access to such services***. *Provisional grants of RAs provided pending a final determination will be available in accordance with the terms described in paragraph 34 below*. [emphasis with underlining in original; emphasis added with *italics* and **bold**]

28. Disability-Related Information. DHS will require disability-related information from Class Members …. [emphasis with underlining in original]

29. When requesting disability-related information, DHS staff will also (a) *ascertain whether there is* **existing information in DHS' possession** that may suffice to grant the requested accommodation, and (b) make best efforts to determine whether there is existing information in HRA's possession which may suffice to grant the requested accommodation. Simultaneous with any request for disability-related information from a Class Member requesting an RA, and *with the Class Member's consent, to the extent feasible*, **DHS will make best efforts to determine whether there is likely existing information in other databases that DHS can access through inter-agency agreements or other means** that may support the request for the accommodation, and if so, DHS will make best efforts to obtain such information. To the extent that DHS obtains relevant disability information as described in (a) and (b) above, DHS will inform the Class Member so as to avoid unnecessary duplicative

documentation. [emphasis with underlining in original; emphasis added with *italics* and **bold**]

34. Provisional RAs. Where a non-trivial amount of time may pass between a Class Member's request for an RA and DHS' determination of that request, such as in instances where DHS requires that the Class Member provide documentation supporting the RA request and such documentation is not immediately available to the Class Member, DHS should confer with the Class Member and consider providing temporary measures in advance of its final determination. If the Class Member asks to confer, DHS must promptly confer with the Class Member. *DHS shall provisionally grant RA requests where DHS determines that* **the denial of the RA is reasonably likely to cause serious harm to a Class Member with a disability**, except where doing so would fundamentally alter the nature of the DHS Shelter System and/or shelter-related services. [emphasis with underlining in original; emphasis added with *italics* and **bold**]

35. Non-Retaliation. **DHS will not retaliate** *or otherwise make any adverse determination regarding shelter eligibility or benefits*[ *as a result of a Class Member's request for an RA*. [emphasis with underlining in original; emphasis added with *italics* and **bold**]

12. The predictable likelihood of this Court's error in ECF No, 148 was made explicit in 2023 by the heedless disconnect between the transcript of Judge Figuredo's words and the Plaintiff's memory of what he saw her head and hands doing when she wrote

out 28 CFR §35.164 as she sat at the bench in her courtroom during a status conference:

MR. DAVIDSON: "… So I want to submit a supplemental pleading to the order to show cause, asking for a temporary restraining order to stop any further actions in the housing court until the – until there is compliance with **28 CFR 35.164** …."

THE COURT: "***Can you just give me a minute? Because you said*** …"

MR. DAVIDSON: "**28 CFR 35.164**."

THE COURT: "Do you have any knowledge of what's in housing court?"

MS. ROTHMAN: "I have limited knowledge of what's happening in housing court …. If my understanding is correct, Mr. Davidson is seeking to file a motion here for an injunction on the housing court matter."

THE COURT: "Yeah, which I can't do."

MS. ROTHMAN: "Yeah."

MR. DAVIDSON: "Wait. Yes. It's a general rule, it's not possible for a person to sue the Office of Court Administration because of the Younger abstention doctrine.  And when you memorialize this, this conference, ***please know that you're laying the foundation for reasonable accommodation in the circuit*** because, no matter what happens here, they're going to go to the circuit, and it's going to be very hard.

"And the – each time I've gone to court, the judges … *pretend not to know anything about the Americans with Disabilities Act or the Rehabilitation Act* or – and I've now gone through four judges … [who] are ***following the pattern that was laid out in 2010, where they just pretend that the law doesn't***

**exist and go on ahead.** *And it needs to stop* …." [emphasis added with *italics* and **bold**] — see (#1) Exhibit 1: June 5, 2023 Transcript in *Davidson v OCA* at p. 21, line 19 through p. 23, line 22; and compare systemic unlawful discrimination based on disability which is documented in *Friedman v. Office of Court Administration,* 10-civ-3433 (EDNY 2010), and this is contextualized by (#2) Exhibit 2, *supra*, and (#3) Exhibit 3, *supra*, and *Adickes, supra* ["'custom or usage' with the force of law"]

13. In the contexts established/alleged in paragraphs 1-12 above, this Motion was made necessary and urgent by NY voters who agreed to amend the NY Constitution in reaction to the too-often-futile anti-discrimination covenants in contractual agreements and the too-often-impotent laws enacted by serial US Congresses, serial NY legislatures and serial NYC City Councils; and this amendment does <u>not</u> exclude the actions and inaction of agents of the federal government, the NY government, the NYC government nor NYC contractors — <u>nor</u> does this amendment exclude the Plaintiff's frustrated needs for meaningful program access in the Roosevelt, Moynihan and Marshall Courthouses, e.g.,

NY Constitution, Article I, § 11. [Equal protection of laws; discrimination in civil rights prohibited]

(a) *No person shall be denied the equal protection of the laws of this state or any subdivision thereof*. No person shall, because of race, color, ethnicity, national origin, <u>*age*</u>, <u>*disability*</u>, creed, religion, or sex, including sexual orientation, gender identity, gender expression, pregnancy, pregnancy outcomes, and reproductive healthcare and autonomy, be <u>*subjected to any*</u>

*discrimination in their civil rights by any other person or by any firm,*

*corporation, or institution, or by the state or any agency or subdivision of the*

*state, pursuant to law*.

(b) Nothing in this section shall invalidate or prevent the adoption of any

law, regulation, program, or practice that is designed to prevent or *dismantle*

*discrimination on the basis of a characteristic listed in this section*, nor shall any

characteristic listed in this section be interpreted to interfere with, limit, or deny

the civil rights of any person based upon any other characteristic identified in

this section. (New. Adopted by Constitutional Convention of 1938 and approved

by vote of the people November 8, 1938; amended by vote of the people

November 6, 2001; amended by vote of the people November 5, 2024.)

[emphasis added with *italics* and *underlining*]


**Impossibility of performance**.


14.  With the effective collusion, assistance and imprimatur of the state government

and its scofflaw Unified Court System (UCS), an unlawful conspiracy of scofflaw agents

of NYC and scofflaw NYC contractors have repeatedly — and successfully — conspired

together to target the Plaintiff's disabilities for the purpose of

(a) blocking and/or delaying the process of research, drafting, editing and

submitting pleadings and preparing for courtroom proceedings in this US District

Court; and

(b) retaliating against the Plaintiff because of his temerity in even trying to

access the constitutionally defined program of the federal judiciary; and

13

(c) causing repeated and cumulative impossibility of performance in the vulnerable Plaintiff's attempts to fulfill his difficult *pro se* litigant duties, obligations and responsibilities

> (i) in *Davidson v HHC*, 1:22-cv-00764-AS-SA; and

> (ii) in *Davidson v OCA*; and

> (iii) in *Davidson v Judicial Council of the Second Circuit*, 1:25-cv-01226-LTS; and

> (iv) in his submitted original jurisdiction Petition for *Certiorari* in the US Supreme Court; and

> (v) in the submitted, but undocketed *Davidson v City of New York* — see *Harlow v. Fitzgerald*, 457 U.S. 800, 818-819 (1982) [official is "expected to know that certain conduct would violate statutory or constitutional rights"]; and see *Henrietta D. v. Bloomberg*, 331 F.3d 261, 268 (2d Cir. 2003) ["chronically and systematically failing to provide plaintiffs with meaningful access"]

15. Although the Plaintiff presented serial oral and written requests for reasonable accommodations based on federal, state and local laws, the mandatory records which are presumed to have been created — or <u>not</u> created — by all recipients of federal financial assistance function as documentary proofs that the baseline gravamen of all his good faith attempts was unlawfully denied again and again by this Court and by the scofflaw Defendants and by scofflaw agents of NYC and scofflaw of NYC contractors

(a) in contravention of the Rehabilitation Act of 1973 (RA), Pub. L. 93-112, 87 Stat. 355; and

(b) in contravention of the United States Housing Act of 1937 as amended by HCDA §109 and QHWRA §507; and

(c) in contravention of the Age Discrimination Act of 1975 (the Age Act), Pub. L 94-135, 89 Stat. 728; and

(d) in contravention of the Civil Rights Restoration Act of 1987 (CRRA), Pub. L. 100-259, 102 Stat. 28; and

(e) in contravention of the Americans with Disabilities Act of 1990 (ADA), Pub. L. 101-336, 104 Stat. 327; and

(f) in contravention of Section 1557 of the Patient Protection and Affordable Care Act of 2010 (ACA), Pub. L. 111-148, 124 Stat. 109–1025, codified at 42 USC §18116. — see SUDOC No. Y1.L11/4.S.HRG. 101-159, *supra* ["*the combination of different … laws  … in order to achieve a public policy outcome*."] [emphasis added with *italics* and *underlining*]; and see NYC Administrative Code (NYC Code) which does not exclude the actions and inaction of agents of NYC and NYC contractors nor the Plaintiff's need for meaningful program access in the Roosevelt, Moynihan and Marshall Courthouses at NYC Code §8-107(28)(b) ["unlawful discriminatory practice … to refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation"]

NYC Code §8-102.

… The term "cooperative dialogue" means the process by which a covered entity and a person entitled to an accommodation, or who may be

entitled to an accommodation under the law, engage in good faith in a written or oral dialogue concerning the person's accommodation needs; potential accommodations that may address the person's accommodation needs, including alternatives to a requested accommodation; and the difficulties that such potential accommodations may pose for the covered entity.

**Systemic unlawful discrimination**

16. Systemic unlawful discrimination and the concurrent creation of impossibility of performance targeting the Plaintiff is documented in Exhibits 4-27 which were timely submitted to the scofflaw agents of NYC's Department of Homeless Services (DHS) as part of an interactive process made explicit in paragraphs 21-36 of the Settlement Agreement (ECF No. 67) in *Butler, supra*, e.g.,

> #(4) Exhibit 4: Form DHS-13 (E) 08/04/22 (page 1 of 3) LLF re disability accommodation; also identified as ECF No. 110-1 in Davidson v. OCA, 1:22-cv-08936-PGG-VF (SDNY 10/09/24) re disability accommodation; and
>
> #(5) Exhibit 5: Letters re re disability accommodation Exhibit 3 is true; and
>
> #(6) Exhibit 6: NYC Department of Homeless Services (DHS) notice re Clean Rite
>
> #(7) Exhibit 7: Form DHS-48d(E) 11/30/22 (page 1 of 5) LLF re transfer; and
>
> #(8) Exhibit 8: Letters re adverse effects of disability in transfer; #(9) Exhibit 9: 1st attachment to Ex. 8 = Letter re disability accommodation; and
>
> #(10) Exhibit 10: 2nd attachment to Ex. 8 = same as Ex. 4; and

#(11) Exhibit 11: 3rd attachment to Ex. 8 = 49 FR 35724, 35728 (September 11, 1984) re disability accommodation

#(12) Exhibit 12: Letters re 28 CFR §35.164; and

#(13) Exhibit 13: 1st attachment to Ex. 12 = Letter to SDNY judge re disability accommodation; and

#(14) Exhibit 14: 2nd attachment to Ex. 12  = same as Ex. 4; and

#(15) Exhibit 15: 3rd attachment to Ex. 12 = same as Ex. 11; and

#(16) Exhibit 16: Letter re 28 CFR §35.164; and

#(17) Exhibit 17: Letters re 28 CFR §35.130 and 28 CFR §§35.160; and

#(18) Exhibit 18: Letter re SDNY; and

#(19) Exhibit 19: 1st attachment to Ex. 18 = Letter to US District Judge Laura Swan; and

#(20) Exhibit 20: 2nd attachment to Ex. 18 = Letter to US District Judge Arun Bramanian; and

#(21) Exhibit 21: 3rd attachment to Ex. 18 = Letter to US Magistrate Judge Figuredo; and

#(22) Exhibit 22: Letter re communication disabilities; and

#(23) Exhibit 23: attachment to Ex. 22 re assistive aids, services and modifications of procedure, e.g., laptop, internet, desk; and

#(24) Exhibit 24: Letter re executive function disabilities; and

#(25) Exhibit 25: attachment to Ex. 24 re assistive aids, services and modifications of procedure, e.g., plastic baskets

#(26) Exhibit 26: Form DHS-48c(E) 05/24/22 (page 1 of 5) LLF re transfer, significantly altered unlawfully by Defendant Richard Lewis; and

#(27) Exhibit 27: Letter re asthma-related prophylaxis

17. In the burden of proof contexts established by the Plaintiff's Exhibits 4-27, there are no corollary records documenting any meaningful attempt to comply with the mandate of 28 CFR §35.164 by NYC recipients of federal financial assistance,;and these intentional pattern and practices persisted despite the oft-repeated words of the Plaintiff which focused on the multi-part mandates of 28 CFR §35.130, construed in conjunction with 28 CFR §35.160 and 28 CFR §35.164, as has been emphasized with redundant repetition in federal regulations implementing 42 USC §18116; and the probative significance of the scofflaw Defendants' recurring successes is demonstrated in cruel-but-not-unusual processes for unlawfully weaponizing disability in online NYC records which have evolved and developed in ways which long-standing experience has taught these fraudfeasors and tortfeasors to expect; and the overwhelming consequences of these perverse harms and irreparable damages have been emphasized with redundant repetition in the accretion of facts and law established/alleged in all previous pleadings docketed by the Plaintiff in this legal action. — see *Goldberg v. Kelly*, 397 US 254, 267 (1970) [minimal constitutional requirements of due process and equal protection] in context of the critical interactive burden-shifting pattern in *McDonnell Douglas Corp v. Green*, 411 US 792 (1973); and see (#2) Exhibit 2, *supra*, and (#3) Exhibit 3, *supra*, at paragraphs 21-36 and 44; and see *Adickes, supra* ["'custom or usage' with the force of law"], and compare NYC Department of Investigation (DOI), "DOI's Examination of Compliance Risks at City-Funded Homeless Shelter Providers and the City's Oversight of Shelter Providers" (October 2024).

https://www.nyc.gov/assets/doi/press-releases/2024/October/39DHSRptRelease10.17
.2024.pdf; and see NY Office of the State Comptroller (OSC) audit, "Oversight of
Shelter Placements" (December 2022)

https://www.osc.ny.gov/state-agencies/audits/2022/12/01/oversight-shelter-placeme
nts

18. In the contexts established/alleged in paragraphs 1-17 above and in support of
the request for reconsideration per FRCP Rule 54(b)(1)(B), this Court's review needs
to be informed by FRCP Role 9 in conjunction with

> (a) the federal common law of contracts which has evolved in response to

>> (i) *Lau v. Nichols*, 414 U.S. 563 (1974); and

>> (ii) Section 120 of the Rehabilitation Act Amendments of 1978, Pub. L.
>> 95-602, 92 Stat. 2982-2983 [PDF pp. 28-29 of 63]
>> https://www.aucd.org/docs/urc/DD%20Act/DD%20Act%20of%201978.pd
>> f; and

>> (iii) the CRRA; and

>> (iv) the Omnibus Budget Reconciliation Act of 1981 (OBRA), Pub. L.
>> 97-35, 96 Stat 357, as parsed by Theodore B. Olson in "Applicability of
>> Certain Cross-Cutting Statutes to Block Grants Under the Omnibus Budget
>> Reconciliation Act of 1981." Op. Off. Legal Counsel 83  (1982); and

> (b) the US Constitution's Bill of Rights and other amendments, federal statutes
> and federal case law which has evolved over the course of many years, e.g., the
> 14th Amendment and the Civil Rights Act of 1871 (Ku Klux Klan Act), Pub. L.
> 42-22, 17 Stat. 241, codified at 42 USC §1986 [action for neglect to prevent]

and 42 USC §1985 [conspiracy to interfere with civil rights]. — see *Goldberg, supra* [minimal constitutional requirements for government decision-makers and decision-making], citing *Armstrong v. Manzo*, 380 U. S. 545, 552 (1965), citing *Grannis v. Ordean*, 234 U. S. 385, 394 (1914), citing *Simon v. Craft,* 182 US 427, 436 (1901) [essential elements of due process = "In determining  whether such *rights were denied* <u>we are governed by</u> *<u>the substance of things, and not by mere form</u>*"] [emphasis added with *italics* and <u>underlining</u>].

19. In the contexts established/alleged in paragraphs 1-18 above and in support of the Plaintiff's request for reconsideration per FRCP Rule 54(b)(1)(B), the documentary record of the scofflaw Defendants' unlawful misconduct is a proximate causative factor in the systemic unlawful discrimination of the scofflaw DHS and its scofflaw contractors — thus, the Defendants and NYC have effectively partnered together in purposeful conspiracies; and moreover, they have been successful in establishing an overwhelmingly hostile work environment for the Plaintiff, encompassing

(a) misconduct that creates an environment that a reasonable person would find hostile or abusive, e.g, the malicious, fraudulent Defendant-created online records of an invalid "diagnosis" of mental illness in 2023 which has continued to produce harms and irreparable damages consequences in 2025; and

(b) misconduct that causes impossibility of performance in the process of fulfilling the Plaintiff's predictable *pro se* litigant obligations in *Davidson v HHC*, and in *Davidson v OCA* and in *Davidson v Judicial Council of the Second Circuit*, and in his submitted Petition for *Certiorari* in the US Supreme Court and in *Davidson v City of New York*; and

(c) the Plaintiff's oft-expressed oral and written statements explaining that he subjectively perceives the misconduct of the scofflaw Defendants and scofflaw DHS and scofflaw DHS contractors to be hostile/abusive and purposeful discrimination based on disability; and

(d) the Plaintiff's oft-expressed assertions that the scofflaw DHS and its scofflaw contractors have created a hostile/abusive environment by targeting him in ways that are informed by an awareness of both his disabilities and the weakness of his "protected class" status. — see *Brown v. Henderson*, 257 F3d 246, 252 (2d Cir. 2001); and see *Butler, supra*; and see *Fox v. Costco Wholesale Corp.*, 918 F3d 65, 74 (2d Cir. 2019) [adopting Title VII hostile work environment test for the ADA]; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

20. In the contexts established/alleged in paragraphs 1-19 above and in support of the request for reconsideration per FRCP Rule 54(b)(1)(B), the Plaintiff asserts that, in anticipation of a need to comply with FRCP Rule 9, he did all that was possible for him to do in order to ensure the development of a record in which the scofflaw DHS and its scofflaw contractors and others would be able to provide this Court with an array of contemporaneous, redundantly validating and reinforcing documentation of

(a) more than one incident which was extraordinarily severe enough to support this Court's finding that the Defendants, DHS and DHS contractors, acting independently and conspiring together, successfully created a hostile work environment by targeting the Plaintiff's well-documented disabilities — see *Knope v. Garland*, No. 20-cv-3274 (2d Cir. Nov. 9, 2021) [the elements of a

hostile work environment claim are the same under the ADA, and thus, the Rehabilitation Act]

(b) more than one incident causing impossibility of performance in the process of fulfilling the Plaintiff's predictable *pro se* litigant obligations in *Davidson v HHC*, and in *Davidson v OCA* and in *Davidson v Judicial Council of the Second Circuit* and in this action and in his submitted Petition for *Certiorari* in the US Supreme Court and in *Davidson v City of New York*. — see *Harris v. Forklift Sys., Inc.*, 510 US 17, 21 (1993) [objectively hostile when it "is permeated with discriminatory intimidation … that is sufficiently severe or pervasive"]

(c) serial accumulating incidents that were sufficiently continuous and concerted to have altered the conditions of the baseline environment which the Plaintiff/client needed in order to access the program and services which serial contracts accompanying the acceptance of federal financial assistance are intended to ensure, e.g.,

> (i) May 2024, as documented in the records of the NYC Department of Homeless Services (DHS) and its contractor, Acacia Network (Acacia); and
>
> (ii) July 2024, as documented in the records of DHS and Acacia; and
>
> (iii) August 2024, as documented in the records of DHS, Acacia, the US Department of Housing and Urban Development (HUD), the NYC Department of Housing Protection and Development (HPD), the Office of the DHS Ombudsman (Ombudsman) and the NYC Coalition of the Homeless (CFTH); and

(iv) November 2024, as documented in the records of DHS, Acacia, Ombudsman, NYC City Council Member Sandy Nurse (CM Nurse), the NYC Public Advocate (NYCPA) and CFTH; and

(v) January-February 2025, as documented in the records of DHS, Acacia, Dr. Victoria Mock, CM Nurse and CFTH; and

(vi) March 2025, as documented in the records of DHS, Acacia, Dr. Victoria Mock, CM Nurse and CFTH; and

(vii) March-April 2025, as documented in the records of DHS, Acacia, HUD, HPD, the NYC Housing Authority (NYCHA), the Jewish Association Serving the Aging (JASA), CM Nurse and CFTH; and

(viii) May 2025, as documented in the records of DHS, Acacia, Community Housing Innovations (CHI), NYC City Council Member Shahana Haniff (CM Haniff) and CFTH; and

(ix) August 2025, as documented in the records of DHS, CHI, Acacia, CM Haniff and CFTH.

(x) September-October 2025, as documented in the records of DHS and Acacia, NYC City Council Member Alexa Avilés (CM Avilés) and CFTH. — see *Harris, supra* at 23 [totality of the circumstances …, including proof of the "frequency of the discriminatory conduct; its severity … and whether it unreasonably interfered with the plaintiff's work performance"]; and see *Butler, supra*; and *Henrietta D., supra* at 268 ["chronically and systematically failing to provide plaintiffs with meaningful access"]; and see *Henrietta D., supra* at 278, citing Charles Alan Wright & Arthur R. Miller, 5 Federal Practice & Procedure §1271 (2002) ["observing that the

Federal Rules of Civil Procedure are designed such that a party will not bear the burden of proof on a particular point of law when the evidence needed is not typically within the party's control"]; and see NY Constitution at Article I, §11(b) [dismantle discrimination on the basis of disability]

21. The Plaintiff seeks to mitigate the adverse consequences of impossibility of performance created for him by the actions and inaction of scofflaw Defendants and non-party, non-federal scofflaw recipients of federal financial assistance within the geographic boundaries of  NY and NYC — and <u>not</u> excluding his unlawfully frustrated needs for meaningful program access to the federal programs in the Roosevelt, Moynihan and Marshall Courthouses.

22. The Plaintiff seeks to undo the harm ECF No. 148 caused by its summary rejection — denial without reading or considering — which undermined the substance of sentences written by the Plaintiff in ECF No. 146.

**RELIEF**

23. The Plaintiff seeks vacatur of ECF No. 148.

Dated: October 24, 2025                Respectfully submitted,
        New York, New York

                                /s/ Ronald Davidson

                                Ronald Davidson
                                353 38th Street
                                New York, New York 11232
                                929-446-5096
                                ron.center2019@gmail.com